ATTORNEY FOR APPELLANT
Kathleen M. Sweeney
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Zachary J. Stock
Deputy Attorney General
Indianapolis, Indiana



FILED
Apr 30 2009, 2:26 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-0803-CR-138

RICHARD P. WALLACE,

*Appellant (Plaintiff below),*

v.

STATE OF INDIANA,

*Appellee (Defendant below).*

Appeal from the Marion Superior Court,
Criminal Division, No. 49F15-0401-FD-1458
The Honorable Lisa Borges, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0706-CR-498

**April 30, 2009**

**Rucker, Justice.**

## Summary

The statutes collectively referred to as the Indiana Sex Offender Registration Act ("Act") require defendants convicted of sex and certain other offenses to register with local law enforcement agencies and to disclose detailed personal information, some of which is not otherwise public. In this case we consider a claim that the Act constitutes retroactive punishment forbidden by the Ex Post Facto Clause contained in the Indiana Constitution because it applies to a defendant who committed his offense before the statutes were enacted. We conclude that as applied in this case the Act violates the constitutional provision.

## Facts and Procedural History

In 1988, Richard Wallace was charged with one count of child molesting as a Class B felony and one count of child molesting as a Class C felony. Under terms of a plea agreement Wallace pleaded guilty to the Class C felony count on February 15, 1989. The trial court imposed a five-year suspended sentence with various conditions of probation. Wallace completed probation in 1992. Two years later the Indiana Legislature passed the Act that, among other things, required probationers and parolees convicted of child molesting on or after June 30, 1994 to register as sex offenders. In 2001 the Act was amended to require all offenders convicted of certain sex offenses to register as sex offenders regardless of conviction date.

In 2003, Wallace's ex-wife notified authorities that Wallace had been convicted of a sex offense but had never registered as an offender. The Sex Offender Registration Coordinator for the Indianapolis Police Department investigated the matter, concluded Wallace was required to register, and sent Wallace a letter to that effect. Wallace responded to the Coordinator on December 31, 2003, and insisted that he did not have to register as a sex offender because the plea agreement executed in 1989 did not require him to do so.

After Wallace did not register, he was charged with failing to register as a sex offender as a Class D felony. Wallace subsequently filed a motion to dismiss, which the trial court denied. Following a trial by jury on January 31, 2007, he was found guilty as charged. The trial court

sentenced Wallace to 545 days of incarceration, all suspended to probation. He appealed raising three claims: (1) the plea agreement foreclosed the State's ability to prosecute him for failing to register as a sex offender, (2) the evidence was insufficient to support the conviction, and (3) the Act violates the ex post facto provisions of both the Indiana and federal Constitutions. The Court of Appeals affirmed the judgment of the trial court. Wallace v. State, 878 N.E.2d 1269, 1277 (Ind. Ct. App. 2008).

Having previously granted transfer we now reverse the judgment of the trial court on Wallace's ex post facto claim. In all other respects we summarily affirm the opinion of the Court of Appeals.

## Background
## I. Advent of Sex Offender Registry Statutes

The State of New Jersey gained national recognition after enacting a sex offender registration statute that has become known as "Megan's Law," named after a child abducted, sexually assaulted, and murdered by a known child molester who had moved across the street from the child's family without their knowledge. The constitutionality of the New Jersey legislation was upheld by the New Jersey Supreme Court in Doe v. Poritz, 662 A.2d 367 (N.J. 1995).

In 1994, Congress adopted the Jacob Wetterling Crimes Against Children and Sexually Violent Offenders Registration Act to encourage individual states to adopt sex offender registration statutes. Under the Wetterling Act, if a state did not adopt some version of Megan's Law with certain provisions, Congress could withhold ten percent of certain grants the state would ordinarily receive for a variety of crime prevention and interdiction programs. See 42 U.S.C. § 14071(f) (1995) (current version at 42 U.S.C. § 14071(g)).

All fifty states and the District of Columbia responded in kind which generated an explosion of litigation challenging the laws under various constitutional provisions including

3

federal and state ex post facto clauses[1] and inspired vigorous academic debate.[2]  The United States Supreme Court has also weighed in on the subject declaring in 2003 that the registration requirements imposed by the Alaska Sex Offender Registration Act were non-punitive and created a civil regime; therefore, the registration requirement could be applied retroactively without violating the Ex Post Facto Clause of the United States Constitution.  Smith v. Doe, 538 U.S. 84, 105-06 (2003).[3]

## II. The Indiana Response

### A.  Initial Sex Offender Registration Act

The Indiana General Assembly adopted its first version of Megan's Law in July 1994.  Referred to as "Zachary's Law,"[4] the Act required persons convicted of certain sex crimes to register as "sex offender[s]."  Act of March 2, 1994, Pub.L. No. 11-1994, § 7 (codified as Indiana Code §§ 5-2-12-1 – 5-2-12-13) (current version at Indiana Code §§ 11-8-8-1 – 11-8-8-

---

[1] See, e.g., E.B. v. Verniero, 119 F.3d 1077 (3d Cir. 1997); Fushek v. State, 183 P.3d 536 (Ariz. 2008); Kellar v. Fayetteville Police Dep't, 5 S.W.3d 402 (Ark. 1999); People v. Castellanos, 982 P.2d 211, 215 (Cal. 1999); State v. Seering, 701 N.W.2d 655 (Iowa 2005); State v. Myers, 923 P.2d 1024 (Kan. 1996); Doe v. District Attorney, 932 A.2d 552 (Me. 2007); Garrison v. State, 950 So.2d 990 (Miss. 2006); State v. Ferguson, 896 N.E.2d 110 (Ohio 2008); Commonwealth v. Lee, 935 A.2d 865 (Pa. 2007).

[2] See, e.g., Michele L. Earl-Hubbard, Comment, *The Child Sex Offender Registration Laws: The Punishment, Liberty Deprivation, and Unintended Results Associated with the Scarlet Letter Laws of the 1990s,* 90 Nw. U. L. Rev. 788 (1996); G. Scott Rafshoon, Comment, *Community Notification of Sex Offenders: Issues of Punishment, Privacy, and Due Process,* 44 Emory L.J. 1633 (1995); Lori N. Sabin, Note, Doe v. Poritz: *A Constitutional Yield to an Angry Society,* 32 Cal. W. L. Rev. 331 (1996); Simeon Schopf, *"Megan's Law": Community Notification and the Constitution*, 29 Colum. J.L. & Soc. Probs. 117 (1995).

[3] Doe thereafter returned to state court and challenged the Act on state law grounds.  The Alaska Supreme Court concluded the Act violated the Ex Post Facto Clause of the Alaska Constitution as applied to Doe. See Doe v. State, 189 P.3d 999, 1019 (Alaska 2008) (adopting the analytical approach used by the United States Supreme Court to evaluate ex post facto claims, but declaring, "Our interpretation of a clause in the Alaska Constitution is not limited by the Supreme Court's interpretation of the corresponding federal clause," Doe, 189 P.3d at 1006).

[4] Zachary's Law was passed in honor of Zachary Snider, a 10-year-old boy from Cloverdale, Indiana who was molested and murdered by a previously convicted child molester.  Overview of Zachary's Law, http://www.allencountysheriff.org/sexoffender/zachary.html (last visited April 23, 2009).  See also Stevens v. State, 691 N.E.2d 412 (Ind. 1997) (upholding Stevens' conviction for the murder of Zachary).

22). The Act contained both registration and notification provisions, i.e., sex offenders were required to take affirmative steps to notify law enforcement authorities of their whereabouts, and that information was then disseminated to the public. In 1994, eight crimes triggered status as a sex offender and the statute applied only to offenders who resided or intended to reside in Indiana. Ind. Code §§ 5-2-12-4, -5 (1994). Registration involved providing limited information to law enforcement agencies where the offender resided and updating that information if the offender moved to a new municipality or county in Indiana. Id. at -8. Notification involved the distribution of a paper registry, updated twice per year and sent automatically to a few select agencies. Id. at -11. Other entities could receive the registry on request, but the home addresses of the registrants were withheld. Id.

**B. Subsequent Amendments to the Act**

Since its inception in 1994 the Act has been amended several times. What began as a measure to give communities notification necessary to protect children from sex offenders, the Act has expanded in both breadth and scope. We summarize below the amendments most relevant to the case before us.

The number of sex offenses that trigger the registration requirement has increased from eight to twenty-one, and has expanded to include murder, voluntary manslaughter, and under certain circumstances kidnapping and criminal confinement. Ind. Code §§ 11-8-8-5, -7 (Supp. 2008). The length of time in which an offender has a duty to register has also increased. Originally the duty to register was prospective only, and terminated when the offender was no longer on probation or discharged from parole. Ind. Code § 5-2-12-13 (1994). But in 1995 the duty to register expanded to ten years after the date the offender was released from prison, placed on parole, or placed on probation, whichever occurred last. Ind. Code § 5-2-12-13 (1995).

Aside from the registration component of the Act, over the years the notification component of the Act also expanded. Under a 1998 amendment, once an offender is discharged from a correctional facility, the facility is required to provide the local law enforcement authorities with, among other things, the offender's fingerprints, photograph, address where the

offender is expected to live, complete criminal history, and any information concerning the offender's treatment of mental disorders. Ind. Code § 5-2-12-7 (1998). The 2001 amendment also requires information concerning any address at which the offender spends more than seven days, and the name and address of the offender's employment or school attendance. Ind. Code § 5-2-12-5 (2002) (amended January 1, 2003) (current version at I.C. § 11-8-8-7). A 2008 amendment requires the disclosure of any electronic mail address, instant messaging username, electronic chat room username, or social networking web site username that a sex offender uses or intends to use. Ind. Code § 11-8-8-8 (Supp. 2008).

Verification of the disclosed information has also become more expansive. A 1998 amendment to the Act requires local law enforcement to verify the offender's current residence by mailing a form to the offender at least once per year, which the offender must return either by mail or in person. Ind. Code § 5-2-12-8.5 (1998). In 2006, the Act was amended to allow local law enforcement officers to visit personally the offender's address at least once per year. Ind. Code § 11-8-8-13 (2006). Under a 2008 amendment, if the offender uses an electronic mail address, instant messaging username, electronic chat room username, or social networking web site, the offender must sign a consent form authorizing searches of the offender's personal computer or device with Internet capacity at any time and installation of hardware and software to monitor the offender's Internet usage on any personal computer or device with Internet capacity. Ind. Code § 11-8-8-8 (2008).

A 1999 amendment made registry information accessible through the Internet. Ind. Code § 5-2-12-11 (1999). Today, an offender's home address, work address, and links to maps of their locations are also available.[5] Black letters flash "FAILED TO REGISTER" under the photographs of offenders who have failed to register. Id. Red letters flash "SEX PREDATOR" under the photographs of offenders whose crimes qualify them as sexually violent predators.[6] Id. Also available is a search-by-name feature that allows web surfers in any part of the world to

---

[5] See Indiana Sheriffs' Sex and Violent Offender Registry, http://www.insor.org (last visited April 23, 2009).

[6] "Sexually violent predator" is defined as "a person who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly [commit sex offenses]." Ind. Code § 35-38-1-7.5(a) (2006).

search the entire state of Indiana for people they know or might know. In addition to being available through Indiana's Online Registry, the information is available through the United States Department of Justice. <u>See</u> Dru Sjodin National Sex Offender Public Website, http://www.nsopr.gov (last visited April 23, 2009).

Criminal penalties associated with the duty to register have increased as well. When enacted in 1994, the Act classified failure to register as a Class A misdemeanor, or as a Class D felony if the offender had a prior unrelated offense for failure to register. Ind. Code § 5-2-12-9 (1994). Amendments in 1996 made failure to register a Class D felony, or Class C felony if there was a prior unrelated offense for failure to register. Ind. Code § 5-2-12-9 (1996). In addition, since 1996, at least once per year a sex offender must register in person with local law enforcement and be photographed in each location where the offender is required to register. Ind. Code § 11-8-8-14 (2006). Failure to do so is punishable as a Class D felony, or a Class C felony if the offender has a prior unrelated conviction for registration violations. Ind. Code § 11-8-8-17 (2006).

A "sexually violent predator" who is absent for more than 72 hours from his principal place of residence or spends time in a county in which he is not otherwise required to register must inform law enforcement of his absence from his principal place of residence. Failure to do so is punishable as a Class A misdemeanor or Class D felony if the person has a prior unrelated offense for failing to comply with requirements imposed. Ind. Code § 11-8-8-18 (2006).

An offender must also at all times keep in his or her possession a valid driver's license or identification card. Ind. Code § 11-8-8-15 (2006). Failure to do so is punishable as a Class A misdemeanor, or Class D felony if the person is a sexually violent predator or has a prior unrelated conviction for failing to comply with requirements imposed. <u>Id.</u> And offenders cannot change their names except through marriage. Ind. Code § 11-8-8-16 (2006).

In addition to the registration and notification components of the Act, a 2006 amendment to the criminal code made it an offense for sexually violent predators and certain subcategories of sex and violent offenders (those designated "offenders against children") to live within one

thousand feet of a school, youth program center, or public park, or living within one mile of the residence of the victim of the offender's sex offense. Ind. Code § 35-42-4-11 (2006).

## Discussion

### I.

Wallace contends that as applied to him the Act violates the ex post facto prohibitions of both the Indiana and federal Constitutions because he committed his crime, was sentenced, and served his sentence before any registration or notification was required.

The United States Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10. The Indiana Constitution provides that "[n]o *ex post facto* law . . . shall ever be passed." Ind. Const. art. I, § 24. Among other things "[t]he ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" Weaver v. Graham, 450 U.S. 24, 28 (1981) (quoting Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 325-26 (1867)) (footnote omitted). The underlying purpose of the Ex Post Facto Clause is to give effect to the fundamental principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties. Armstrong v. State, 848 N.E.2d 1088, 1093 (Ind. 2006).

This Court has never addressed whether the analysis of an ex post facto claim under the Indiana Constitution is the same as under the federal Constitution. The Court of Appeals has determined there is no difference. See, e.g., Wiggins v. State, 727 N.E.2d 1, 5 (Ind. Ct. App. 2000); Douglas v. State, 878 N.E.2d 873, 878 (Ind. Ct. App. 2007); Ridner v. State, 892 N.E.2d 151, 154 (Ind. Ct. App. 2008). But this proposition was first advanced in Spencer v. O'Connor, 707 N.E.2d 1039, 1042 (Ind. Ct. App. 1999). Ultimately concluding that the 1994 version of the Act did not violate the ex post facto provision of the Indiana Constitution, the Court declared, "Both parties acknowledge, and we agree, that the *ex post facto* analysis under Indiana law is the same as under the federal Constitution." Id. In support the Court of Appeals cited two opinions from this Court, Crawford v. State, 669 N.E.2d 141 (Ind. 1996) and State ex rel. Dorton v.

Circuit Court of Elkhart County, 274 Ind. 373, 412 N.E.2d 72 (1980). See Spencer at 1042. We observe however that although ex post facto challenges were raised in both Crawford and Dorton, neither opinion discussed one way or the other whether ex post facto analysis under the Indiana Constitution is the same as under the federal constitution.

This Court has long observed that even when confronted with similarly worded provisions in the federal constitution, we will nonetheless apply an independent analysis when interpreting provisions in our own constitution. "The Indiana Constitution has unique vitality, even where its words parallel federal language." State v. Gerschoffer, 763 N.E.2d 960, 965 (Ind. 2002). When we interpret language in our state constitution substantially identical to its federal counterpart, "we may part company with the interpretation of the Supreme Court of the United States or any other court based on the text, history, and decisional law elaborating the Indiana constitutional right." Ajabu v. State, 693 N.E.2d 921, 929 (Ind. 1998). When interpreting similarly worded provisions in the Indiana Constitution, we often rely on federal authority to inform our analysis, even though the outcome may be different. Collins v. Day, 644 N.E.2d 72, 75 (Ind. 1994).

**II.**

When a statute is challenged as an alleged violation of the Indiana Constitution, our standard of review is well settled. Every statute stands before us clothed with the presumption of constitutionality until that presumption is clearly overcome by a contrary showing. State v. Rendleman, 603 N.E.2d 1333, 1334 (Ind. 1992). The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. Id. "If two reasonable interpretations of a statute are available, one of which is constitutional and the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless the unambiguous language of the statute requires that conclusion." State Bd. of Tax Comm'rs v. Town of St. John, 702 N.E.2d 1034, 1037 (Ind. 1998).

As noted above, the United States Supreme Court concluded that Alaska's Sex Offender Registration Act, which is very similar to Indiana's Act, did not violate the Ex Post Facto Clause of the United States Constitution. See Smith, 538 U.S. at 105-06. In reaching its conclusion, the Court applied the "intent-effects" test derived from its prior decisions to determine whether the statute imposed punishment. Id. at 92. Under this test a court first determines whether the legislature meant the statute to establish civil proceedings. Id. If the intention of the legislature was to impose punishment, then that ends the inquiry, because punishment results. Id. If, however the court concludes that the legislature intended a non-punitive regulatory scheme, then the court must further examine whether the statutory scheme is so punitive in effect as to negate that intention thereby transforming what had been intended as a civil regulatory scheme into a criminal penalty. Id.

Although we reach a different conclusion here than the United States Supreme Court reached in Smith, we agree that the intent-effects test provides an appropriate analytical framework for analyzing ex post facto claims under the Indiana Constitution.[7] And although a multifactor test is susceptible to different conclusions, the availability of the reported decisions applying the test helps in our analysis.

**III.**

The intent-effects test ordinarily directs us to determine first whether the Legislature intended the Act to be a regulatory scheme that is civil and non-punitive. But we make two observations. First, as the Indiana Court of Appeals has observed, "[I]t is difficult to determine legislative intent since there is no available legislative history and the Act does not contain a purpose statement." Spencer, 707 N.E.2d at 1043. Second, it is unnecessary to address the first

---

[7] In Smith the Court declared, "Because we ordinarily defer to the legislature's stated intent, only the *clearest proof* will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id. at 92 (internal quotations omitted) (emphasis added). We observe that legislative intent in this case has not been stated. Thus the "clearest proof" standard is not applicable here. But even if legislative intent was clearly discernible, our standard of review for challenges to the constitutionality of a statute has never included a clearest proof element. Instead, a statute is presumed constitutional, and the party challenging its constitutionality has the burden of overcoming the presumption by a contrary showing. Rendleman, 603 N.E.2d at 1334 (Ind. 1992). The heightened standard of clearest proof is not consistent with this State's decisional law.

prong of the test in this instance, because assuming without deciding that the Legislature intended the Act to be non-punitive, we conclude its effects are nonetheless punitive as to appellant Wallace.

In assessing a statute's effects, the Supreme Court indicated that the seven factors listed in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963), "provide[] some guidance." United States v. Ward, 448 U.S. 242, 249 (1980). The seven factors are: "[1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of *scienter*, [4] whether its operation will promote the traditional aims of punishment-retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned." Mendoza-Martinez, 372 U.S. at 168-69 (footnotes omitted). The Supreme Court has not explained the relative weight to be afforded each factor. However, the Court has acknowledged that the factors "often point in differing directions" and that no one factor is determinative. Hudson v. United States, 522 U.S. 93, 101 (1997) (quoting Mendoza-Martinez, 372 U.S. at 169). In any event, "our task is not simply to count the factors on each side, but to weigh them." State v. Noble, 829 P.2d 1217, 1224 (Ariz. 1992). We address each factor in turn.

*1.     Affirmative Disability or Restraint*

We first ask "[w]hether the sanction involves an affirmative disability or restraint." Mendoza-Martinez, 372 U.S. at 168. The short answer is that the Act imposes significant affirmative obligations and a severe stigma on every person to whom it applies. First, the Act compels affirmative post-discharge conduct (mandating registration, re-registration, disclosure of public and private information, and updating of that information) under threat of prosecution. Ind. Code §§ 11-8-8-14, -17 (2006). The duties imposed on offenders are significant and intrusive, including allowing in-home personal visitation for verification of the offender's address, id. at -13, carrying a valid identification at all times, id. at -15, and for some offenders, informing local law enforcement authorities of their plans to travel from their principal place of

11

residence for more than 72 hours, id. at -18. Further, the time periods associated with the Act are intrusive. Sexually violent predators must re-register for the rest of their lives;[8] all other offenders must re-register annually for a minimum of ten years. Id. at -14, -19 (2006). All sex offenders who change residences must notify local law enforcement within seventy-two hours. Id. at -11. It appears to us that through aggressive notification of their crimes, the Act exposes registrants to profound humiliation and community-wide ostracism. Further the practical effect of this dissemination is that it often subjects offenders to "vigilante justice" which may include lost employment opportunities, housing discrimination, threats, and violence. Spencer, 707 N.E.2d at 1045. See also Doe v. Pataki, 120 F.3d 1263, 1279 (2d Cir. 1997) (noting that "sex offenders have suffered harm in the aftermath of notification – ranging from public shunning, picketing, press vigils, ostracism, loss of employment, and eviction, to threats of violence, physical attacks, and arson").

Considered as a whole the Act's registration and notification provisions impose substantial disabilities on registrants. When the applicable provisions of the Act are considered together, the first Mendoza-Martinez factor clearly favors treating the effects of the Act as punitive when applied to Wallace.

2.      *Sanctions that have Historically been Considered Punishment*

We next determine "whether [the sanction] has historically been regarded as a punishment." Mendoza-Martinez, 372 U.S. at 168. The Act does not expressly impose sanctions that have been historically considered punishment. Because sex offender registration and notification acts are of relatively recent origin, some courts addressing this issue have determined that there is no historical equivalent. See, e.g., Hatton v. Bonner, 356 F.3d 955, 965 (9th Cir. 2004); Cutshall v. Sundquist, 193 F.3d 466, 475 (6th Cir. 1999). Other courts have determined that sanctions imposed are not analogous to the historical punishments of shaming. See, e.g., Russell v. Gregoire, 124 F.3d 1079, 1091-92 (9th Cir. 1997); E.B. v. Verniero, 119 F.3d 1077, 1099-1100 (3d Cir. 1997). But we agree with the Alaska Supreme Court that "the dissemination

---

[8] Since 2007, sexually violent predators have been required to re-register every ninety days. Ind. Code § 11-8-8-14 (2007).

provision at least resembles the punishment of shaming . . . ." <u>Doe</u>, 189 P.3d at 1012; <u>see also</u> <u>Smith</u>, 538 U.S. at 115-16 (Ginsburg, J., dissenting) ("[The Alaska Act's] public notification regimen, which permits placement of the registrant's face on a webpage under the label 'Registered Sex Offender,' calls to mind shaming punishments once used to mark an offender as someone to be shunned."). We observe that the Act's requirements also resemble historical common forms of punishment in that its registration and reporting provisions are comparable to conditions of supervised probation or parole.[9] Aside from the historical punishment of shaming, the fact that the Act's reporting provisions are comparable to supervised probation or parole standing alone supports a conclusion that the second <u>Mendoza-Martinez</u> factor favors treating the effects of the Act as punitive when applied in this case.[10]

*3.      Finding of Scienter*

Third, we consider "whether [the statute] comes into play only on a finding of *scienter*." <u>Mendoza-Martinez</u>, 372 U.S. at 168. "The existence of a scienter requirement is customarily an important element in distinguishing criminal from civil statutes." <u>Kansas v. Hendricks</u>, 521 U.S. 346, 362 (1997). If a sanction is not linked to a showing of *mens rea,* it is less likely to be intended as a punishment.

---

[9] For example, persons on probation must report regularly to a probation officer and permit the probation officer to visit the person's home. Ind. Code § 35-38-2-2.3 (Supp. 2008). The length of time sex offenders and sexually violent predators are on parole mirrors substantially the length of their registration requirement – ten years for sex offenders, and the remainder of the offender's life for sexually violent predators and those convicted of murder or voluntary manslaughter. Ind. Code § 35-50-6-1(d), (e) (2006).

[10] <u>See also</u> Andrea E. Yang, Comment, *Historical Criminal Punishments, Punitive Aims and Un-"Civil" Post-Custody Sanctions on Sex Offenders: Reviving the Ex Post Facto Clause as a Bulwark of Personal Security and Private Rights*, 75 U. Cin. L. Rev. 1299, 1328 n.199 (2007) (noting that because actual supervision of parolees and probationers is minimal due to high supervisory officer caseloads, only about half of probationers comply with probation requirements and thus suggesting that sex offender restrictions "may actually exceed those of probationers and parolees").

We acknowledge that the Act applies to a few strict liability offenses.[11] However, it overwhelmingly applies to offenses that require a finding of scienter for there to be a conviction. The few exceptions do not imply a non-punitive effect. We conclude that the third Mendoza-Martinez factor slightly favors treating the effects of the Act as punitive when applied here.

4.      *The Traditional Aims of Punishment*

We next ask "whether [the statute's] operation will promote the traditional aims of punishment – retribution and deterrence." Mendoza-Martinez, 372 U.S. at 168. We first observe that although the Mendoza-Martinez test focuses on retribution and deterrence, under our state Constitution, the primary objective of punishment is rehabilitation. "The penal code shall be founded on the principles of reformation, and not of vindictive justice."[12] Ind. Const. art. 1, § 18. And there are other objectives including the need to protect the community by sequestration of the offender, community condemnation of the offender, as well as deterrence. Abercrombie v. State, 441 N.E.2d 442, 444 (Ind. 1982).

In Kansas v. Hendricks, the United States Supreme Court determined that the Kansas Sexually Violent Predator Act was not retributive because "it does not affix culpability for prior criminal conduct." 521 U.S. 346, 362 (1997). The Kansas Act is triggered not by a criminal conviction, but rather by criminal conduct. It applies to persons charged with sexually violent offenses but who may be absolved of criminal responsibility. Id.; see also Kan. Stat. Ann. §§ 59-29a02(a), 59-29a03(a) (2005). As a result the Court declared, "[A]n absence of the necessary criminal responsibility suggests that the State is not seeking retribution for a past misdeed." Hendricks, 521 U.S. at 362. Indiana's Act is dramatically

---

[11] For example, child molesting, as defined by Indiana Code § 35-42-4-3 (2006), requires no scienter where there is sexual intercourse or deviate sexual conduct with a child under fourteen years of age. See also Ind. Code § 35-42-4-9 (2006) (sexual misconduct with a minor).

[12] "Retribution is vengeance for its own sake. It does not seek to affect future conduct or solve any problem except realizing 'justice.' Deterrent measures serve as a threat of negative repercussions to discourage people from engaging in certain behavior." Artway v. Attorney Gen. of N.J., 81 F.3d 1235, 1255 (3d Cir. 1996).

14

different. As discussed supra in the Background section of this opinion the Act applies only to offenders convicted of specified offenses.

It is true that to some extent the deterrent effect of the registration and notification provisions of the Act is merely incidental to its regulatory function. And we have no reason to believe the Legislature passed the Act for purposes of retribution – "vengeance for its own sake," Artway, 81 F.3d at 1255. Nonetheless it strains credulity to suppose that the Act's deterrent effect is not substantial, or that the Act does not promote "community condemnation of the offender," Abercrombie, 441 N.E.2d at 444, both of which are included in the traditional aims of punishment. We conclude therefore that the fourth Mendoza-Martinez factor slightly favors treating the effects of the Act as punitive when applied to Wallace.

5.    *Application Only to Criminal Behavior*

Under the fifth factor we consider "whether the behavior to which [the statute] applies is already a crime." Mendoza-Martinez, 372 U.S. at 168. The fact that a statute applies only to behavior that is already, and exclusively, criminal supports a conclusion that its effects are punitive. When analyzing the Alaska Sex Offender Registration Act, the Supreme Court declared that past criminal conduct is "a necessary beginning point, for recidivism is the statutory concern." Smith, 538 U.S. at 105. But if recidivism were the only concern, the statute would apply not only to convicted sex offenders, but also to other defendants who might pose a threat to society even if they are not convicted. Doe, 189 P.3d at 1014. For example, the Washington Sex Offender Registration Act, upheld by the Ninth Circuit, includes sex offenders not found guilty – those charged with sex offenses but found incompetent to stand trial, found not guilty by reason of insanity, and those committed to mental health facilities as sexual psychopaths or sexually violent predators – as well as those who are convicted of sex offenses. Russell v. Gregoire, 124 F.3d 1079, 1091 (9th Cir. 1997); Wash. Rev. Code § 4.24.550(1)(c)-(e) (Supp. 2009).[13]

---

[13] See also Femedeer v. Haun, 227 F.3d 1244, 1251-52, 1255 (10th Cir. 2000) (upholding constitutionality of Utah's Sex Offender Registration Act which includes offenders found not guilty on ground of mental incapacity).

In this jurisdiction the Act applies only to defendants "convicted" of certain specified offenses. Ind. Code § 11-8-8-5(a) (2006). We find nothing in the Act that anticipates registration and notification for an offender charged with a sex offense who later by reason of an agreement pleads guilty to another charge for which registration is not required. Nor for example does the Act appear to anticipate that a defendant whose conviction for a sex offense is reversed on appeal (for reasons other than sufficiency of the evidence) is required to register despite having obviously engaged in prohibited conduct. In sum, it is the determination of guilt of a sex offense, not merely the fact of the conduct and potential for recidivism, that triggers the registration requirement. Because it is the criminal conviction that triggers obligations under the Act, we conclude that this factor supports the conclusion that the Act is punitive in effect as to Wallace.

*6.        Advancing a Non-Punitive Interest*

We next ask whether, in the words of the United States Supreme Court, "an alternative purpose to which [the statute] may rationally be connected is assignable for it." Mendoza-Martinez, 372 U.S. at 168-69. We agree with the Alaska Supreme Court that this statement is best understood as an inquiry into whether the Act advances a legitimate, regulatory purpose. Doe, 189 P.3d at 1015. The answer is undoubtedly yes. As we indicated earlier in this opinion, "it is difficult to determine legislative intent since there is no available legislative history and the Act does not contain a purpose statement." Spencer, 707 N.E.2d at 1043. And, what began under the original Megan's law – or in this state, Zachary's law – as a measure to give the community notification necessary to protect its children from sex offenders, has become something much greater. Although this expansion supports the view that the effects of the Act are punitive, still the Act advances a legitimate regulatory purpose. We are not looking for a "close or perfect fit with the nonpunitive aims," Smith, 538 U.S. at 103, but only that the Act advances a legitimate purpose of public safety. Id. at 102-03. We cannot disagree that "[t]he risk of recidivism posed by sex offenders is 'frightening and high,'" Lee, 935 A.2d at 882 (quoting McKune v. Lile, 536 U.S. 24, 34 (2002)), or that registration systems are a legitimate way to protect the public from repeat offenders. We conclude therefore that the sixth Mendoza-Martinez factor clearly favors treating the effects of the Act as regulatory and non-punitive.

*7.     Excessiveness In Relation to State's Articulated Purpose*

Finally we determine "whether [the Act] appears excessive in relation to the alternative purpose assigned." Mendoza-Martinez, 372 U.S. at 169. A number of courts give greatest weight to this factor. See, e.g., Kellar v. Fayetteville Police Dept., 5 S.W.3d 402, 409 (Ark. 1999) ("It is the seventh and final factor which weighs most heavily in the balance in Arkansas, as in most other states: the question of whether the Act is excessive in relation to its alternative purposes."); Commonwealth v. Mullins, 905 A.2d 1009, 1017 (Pa. Super. Ct. 2006) ("Most relevant to the issue in the instant appeal [] is the last *Mendoza-Martinez* factor . . . which involves an examination of excessiveness when determining whether a statute has a punitive effect."); Rodriguez v. State, 93 S.W.3d 60, 75 (Tex. Crim. App. 2002) ("of all the [Mendoza-Martinez] factors, this factor [excessiveness] cuts most directly to the question of which statutes cross the boundaries of civil sanctions, and which do not. Accordingly, we afford this factor considerable weight in deciding whether the amendments are punitive-in-fact") (internal citations omitted).

As we note above registration systems are a legitimate way to protect the public from sex offenders. Of course if the registration and disclosure are not tied to a finding that the safety of the public is threatened, there is an implication that the Act is excessive. In those jurisdictions that have rejected ex post facto challenges to sex offender registration statutes, courts have specifically noted that disclosure was limited to that necessary to public safety, and/or that an individualized finding of future dangerousness was made. For example, in Pataki, 120 F.3d at 1281-83, 1285, cert. denied, 522 U.S. 1122 (1998), the Second Circuit upheld New York's sex offender statute based on its tiered structure, which tied the harshness of the registration requirements to an individualized assessment of the risk that each offender posed to the community. Significantly, despite the outcome the court reached, it noted that the question of the statute's punitive-in-fact aspect was "not free from doubt." Id. at 1265. See also Cutshall v. Sundquist, 193 F.3d 466, 471, 483 (6th Cir. 1999) (rejecting ex post facto challenge to Tennessee sex-offender registration statute, which provided that the Tennessee Bureau of Investigation or the local law enforcement agency could release relevant information deemed necessary to protect the public concerning a specific sexual offender who was required to register).

In this jurisdiction the Act makes information on all sex offenders available to the general public without restriction and without regard to whether the individual poses any particular future risk. Indeed we think it significant for this excessiveness inquiry that the Act provides no mechanism by which a registered sex offender can petition the court for relief from the obligation of continued registration and disclosure. Offenders cannot shorten their registration or notification period, even on the clearest proof of rehabilitation.[14] Thus, the non-punitive purpose of the Act, although of unquestioned importance, does not serve to render as non-punitive a statute that is so broad and sweeping. We conclude that the seventh Mendoza-Martinez factor favors treating the effects of the Act as punitive.

In summary, of the seven factors identified by Mendoza-Martinez as relevant to the inquiry of whether a statute has a punitive effect despite legislative intent that the statute be regulatory and non-punitive, only one factor in our view - advancing a non-punitive interest – points clearly in favor of treating the effects of the Act as non-punitive. The remaining factors, particularly the factor of excessiveness, point in the other direction.

**Conclusion**

Richard Wallace was charged, convicted, and served the sentence for his crime before the statutes collectively referred to as the Indiana Sex Offender Registration Act were enacted. We conclude that as applied to Wallace, the Act violates the prohibition on ex post facto laws contained in the Indiana Constitution because it imposes burdens that have the effect of adding punishment beyond that which could have been imposed when his crime was committed. We therefore reverse the judgment of the trial court.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.

---

[14] We note, however, that a sexually violent predator may, after ten years, "petition the court to consider whether the person should no longer be considered a sexually violent predator." I.C. § 35-38-1-7.5(g) (2006).