

**FILED**

Jun 17 2015, 7:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
LeBlanc & Mulholland, LLC
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Kenneth E. Biggins
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kevin A. Ammons,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 17, 2015

Court of Appeals Cause No.
45A03-1411-CR-394

Appeal from the Lake Superior
Court.

The Honorable Diane Ross Boswell,
Judge.

Cause No. 45G03-8811-CF-217

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Defendant, Kevin A. Ammons (Ammons), appeals the denial of his petition to remove his designation as a sexually violent predator (SVP) and the accompanying requirement that he register as a sex offender for life.

[2] We affirm.

## ISSUE

[3] Ammons raises one issue on appeal which we restate as: Whether the trial court erred in denying his petition to remove his SVP designation.

## FACTS AND PROCEDURAL HISTORY

[4] The relevant facts are not in dispute. On November 10, 1988, Ammons was charged with one Count of child molesting, a Class A felony. After a trial by jury in November 1989, Ammons was convicted and was sentenced to thirty-five years in the Department of Correction (DOC) with 371 days of credit. In November 2006, Ammons was released to parole, and soon thereafter, he registered as sex offender with the Lake County Sheriff's Department, in Indiana. Ammons satisfactorily completed his parole in 2007. In March 2009, Ammons moved to Iowa. As an Iowa resident, Ammons was required to register as sex offender for ten years from the date he completed his parole. In 2011, the State of Iowa charged Ammons for failing to register as a sex offender. Ammons pled guilty and he served eleven months of supervised probation. Ammons continued to reside in Iowa until September 2013 when he relocated to Indiana.

On February 19, 2014, the Lake County Sheriff's Department notified Ammons in writing that he was required to register as a SVP. On February 27, 2014, Ammons filed a *pro se* verified petition for removal from the Registry pursuant to Indiana Code Section 11-8-8-22,[1] claiming that the Indiana Sex Offender Registration Act (the Act) as applied to him violated the *ex post facto* clause of the Indiana Constitution because he had committed the sex offense before the Act became effective. The Lake County Prosecutors' office[2] responded to Ammons' petition stating in part that "there are no legal grounds on which to object." (Appellant's App. p. 21). The trial court granted Ammons' petition on March 24, 2014. On April 16, 2014, the State filed a motion to correct error asking the trial court to set aside its Order and set a hearing date. On May 6, 2014, the trial court vacated its initial Order and set an evidentiary hearing date for May 28, 2014. At the hearing, the trial court took judicial notice of Ammons' trial transcript, heard arguments from both sides, and after both parties had filed their briefs, it took the matter under advisement. On October

---

[1] Ind. Code § 11-8-8-22 (c) governs petitions to remove designations or to register under less restrictive conditions. After receiving a petition under this section, the court may: (1) summarily dismiss the petition; or (2) give notice to [various entities] and set the matter for hearing." I.C. § 11-8-8-22(d).

[2] The record shows that the Lake County Prosecutor's office later requested the State to appear and respond to Ammons petition.

15, 2014, the trial court denied Ammons' petition to be removed from the Registry and subsequently directed Ammons to register as a SVP.

[6] Ammons now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Indiana Sex Offender Registration Act*

[7] We first determine the applicable statutory framework before turning to Ammons' contention on appeal.

[8] As way of background, in the wake of a convicted sex offender molesting and murdering ten-year-old Zachary Snider, the Indiana General Assembly passed the Act in March 2, 1994. Ind. P.L. No. 11–1994, § 7 (eff. July 1, 1994) (codified at Ind.Code §§ 5-2-12-1 to 5-2-12-13) (current version at I.C. §§ 11-8-8-1 to 11-8-8-22). "Originally the duty to register was prospective only, and terminated when the offender was no longer on probation or discharged from parole." *Wallace v. State*, 905 N.E.2d, 371,375 (Ind. 2009) (citing I.C. § 5-2-12-13 (1994)), *reh'g denied*. As originally drafted, an individual who committed one of eight offenses—including child molesting where the victim was less than eighteen years old—was required to register with law enforcement agencies for a set period of time. I.C. §§ 5-2-12-4;-5 (1994).

[9] Since its inception in 1994, the Act has been amended several times, and actively expanded "in both breadth and scope." *Wallace*, 905 N.E.2d at 375. In *Hollen v. State*, 994 N.E.2d 1166, 1175 (Ind. Ct. App. 2013), we reviewed the Act's framework as follows:

In 1995 the duty to register expanded to ten years after the date the offender was released from prison, placed on parole, or placed on probation, whichever occurred last. In 1998, the legislature defined a "sexually violent predator" as "an individual who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly engage in any of the offenses described in section 4 of this chapter." Ind. Code § 5-2-12-4.5 (1998); P.L. No. 56-1998, § 7 (eff. July 1, 1998). That same year, the legislature amended Ind. Code § 35-38-1-7.5(c) to provide that "[a]t the sentencing hearing, the court shall determine whether the person is a [SVP]. Before making a determination under this section, the court shall consult with a board of experts consisting of two (2) board certified psychologists or psychiatrists who have expertise in criminal behavioral disorders." *See* Pub. L. No. 56-1988, § 17 (eff. July 1, 1998). In 2003, the legislature amended Ind. Code § 5-2-12-13 to provide that "[a]n offender who is found to be a [SVP] by a court under [Ind. Code] § 35-38-1-7.5(b) is required to register for life." P. L. No. 222-2003, § 1 (eff. July 1, 2003).[3] In 2007, the legislature amended Ind. Code § 35-38-1-7.5(b) to provide that "a person is a [SVP] by operation of law if an offense committed by the person satisfies the conditions set forth in subdivision (1) or (2) and the person was released from incarceration,

---

[3] We note that *Hollen* court left out the 2006 Amendment. Effective July 1, 2006, the legislature amended the Act requiring lifetime registration for a defendant whose offense qualifies the defendant as a "[SVP]". Ind. Code § 11-8-8-19 (2006). Child molesting—one of the offenses to which Ammons convicted of—falls within that category. Ind. Code § 35-38-1-7.5(b) (2006). We further note that in 2006, the definition of SVP contained no limitation on the date of a conviction that could qualify an offender for the designation. *See Jensen v. State*, 905 N.E.2d 384, 394 (Ind. 2009).

secure detention, or probation for the offense after June 30, 1994."
P.L. No. 216–2007, § 37 (eff. May 10, 2007).

[10] Based on the plain language of Indiana Code section 35-38-1-7.5(b), we conclude that the Act applies retroactively to Ammons. Specifically, because Ammons was convicted of child molesting as a Class A felony—one of the qualifying offenses listed in I.C. § 11-8-8-5—and because he was released from incarceration after June 30, 1994, the statute provides that his status is a SVP by operation of law and he must register. This notwithstanding, however, Ammons' classification as a SVP by operation of law requiring registration is only valid if application of the Act does not violate applicable provisions of constitutional law.

## II. *Ex Post Facto Claim*

[11] Ammons contends that his classification as a SVP violates the *Ex Post Facto* Clause under the Indiana and United State Constitutions. Responding to Ammons' claim, the State argues that the event triggering Ammons requirement to register as a sex offender in Indiana was not when he committed the underlying crimes in 1988, but when he returned to Indiana in 2013. The State specifically argues that "[b]y reclaiming his Indiana citizenship, Ammons voluntarily assented to Indiana law in effect in 2013." (Appellee's Br. p. 6). The State further contends that the correct date to analyze Ammons' *ex post facto* claim is December 2013. We disagree. As this court noted in *Burton v. State*, 977 N.E.2d 1004, 1009 (Ind. Ct. App. 2012), *trans. denied,* "[o]f importance in

determining whether [the Act] violates our constitution's prohibition on *ex post facto* laws is the date of the commission of the crime in relation to the passage of [the Act]."

[12] Turning to Ammons' arguments regarding whether his registration and status as an SVP violate the prohibition against *ex post facto* laws in the Indiana Constitution and the United States Constitution, we observe that Article I, § 10 of the United States Constitution prohibits the States from enacting laws with certain retroactive effects. *Minton v. State*, 802 N.E.2d 929, 933 (Ind. Ct. App. 2004), *trans. denied*. Similarly, the Indiana Constitution provides, "[N]o ex post facto law . . . shall ever be passed." IND. CONST. art. I, § 24. The *ex post facto* prohibition forbids any law that imposes a punishment for an act that was not punishable at the time it was committed, or imposes additional punishment to the punishment then prescribed. *Wallace*, 905 N.E.2d at 377. "The underlying purpose of the *Ex Post Facto* Clause is to give effect to the fundamental principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties." *Id.*; *see also Blakemore v. State*, 925 N.E.2d 759, 761 (Ind. Ct. App. 2010).

[13] When we evaluate an *ex post facto* claim under the Indiana Constitution, our courts apply the "intent-effects" test. *Wallace*, 905 N.E.2d at 378. First, we examine "what type of scheme" the General Assembly intended the Act to establish. *Id.* Our supreme court has held that "in passing the Act 'the legislature's intent was to create a civil, non-punitive, regulatory scheme.'" *State v. Pollard*, 908 N.E.2d 1145, 1150 (Ind. 2009); *see* also *Wallace*, 905 N.E.2d

at 379. We must therefore consider whether the effects of the Act, as applied to Ammons, "are so punitive in nature as to constitute a criminal penalty." *See Gonzalez v. State*, 980 N.E.2d 312, 317 (Ind. 2013) (citing *Wallace*, 905 N.E.2d at 378).

[14] In evaluating a statute's effects, our supreme court has adopted a seven-factor test—the *Mendoza-Martinez* test—for determining whether a law is an unconstitutional *ex post facto* law: "(1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether it promotes the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether it has a rational alternative purpose; and (7) whether it is excessive in relation to the alternative purpose assigned." *Wallace*, 905 N.E.2d at 379. (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963)). No one factor is outcome determinative, and "our task is not simply to count the factors on each side, but to weigh them." *Id.* We address each factor in turn.

### 1. *Affirmative Disability or Restraint*

[15] The first of the *Mendoza-Martinez* factors considers whether the sanction involves an affirmative disability or restraint. The *Gonzalez* court noted that the Act "imposes significant affirmative obligations and a severe stigma on those to whom it applies." *Gonzalez*, 980 N.E.2d at 317. The court further noted that an offender must provide a wide array of personal information that is made public, must register in person with local law enforcement and have his photograph

taken annually, must re-register on changes in residential or employment status, and he must carry valid identification at all times, among other requirements. *Id*. In addition, the *Gonzalez* court found "extension of such intrusive registration obligations to a lifetime requirement is an additional affirmative restraint which weighs in favor of treating the effects of [the Act] as punitive." *Id*.

[16]     Ammons committed the child molesting offense in 1988; registration for the offense was not even required until July 1, 1994. In November 2006, Ammons was released from the DOC. At the time, the legislature had amended the Act such that a defendant who committed an offense qualifying the defendant as a "sexually violent predator" under I.C. § 11-8-8-19 must register for life. When Ammons committed the 1988 child molesting offense, he had not received fair warning that his conduct would give rise to having to register as a sex offender, let alone register for life. *See Wallace 905* N.E.2d at 384. Considered as a whole, the Act imposes substantial affirmative disabilities and restraints on Ammons, and this first factor clearly favors treating the effects of the Act as punitive when applied to him.

### 2. *Sanctions that Have Historically Been Considered Punishment*

[17]     The *Gonzalez* court found the next factor, whether the sanction has historically been regarded as a punishment, also weighed in favor of punitive treatment. *Gonzalez* , 980 N.E.2d at 318. It noted that the dissemination and widespread availability of offenders' personal information has been found to resemble the historical punishment of "shaming," and by extending the duration of the

registration requirement from ten years to life, the Act has the effect of increasing shame on the defendant. *Id.* at 317-18. Here, we find that this factor weighs the same way for Ammons.

### 3. *Finding Scienter*[4]

[18] The third factor is whether the statute comes into play only on a finding of scienter. *Id.* "The existence of a scienter requirement is customarily an important element in distinguishing criminal from civil statutes." *Wallace*, 905 N.E.2d at 381. We focus on whether the sanction is linked to a showing of *mens rea*; if it is, it is more likely to be considered punishment. *Id.* As our supreme court observed in *Wallace*, the Act "overwhelmingly applies to offenses that require a finding of scienter for there to be a conviction." *Id.* In this case however, Ammons qualifying offense is one of the few offenses included in the Act for which there is no scienter requirement. *Id.* at n. 11; *see* I.C. § 35-42-4-3 (2013) (no scienter requirement for the offense of child molesting where there is sexual intercourse or deviate sexual conduct with a child under the age of fourteen). Thus, this factor is not punitive as applied to Ammons.

---

[4] The term scienter is Latin for "knowingly" and is defined as "[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission." Black's Law Dictionary 1463 (9th ed. 2009).

#### 4. *The Traditional Aims of Punishment*

We next ask "whether [the Act's] operation will promote the traditional aims of punishment—retribution and deterrence." *Mendoza–Martinez*, 372 U.S. at 168. The underlying assumption is that if the statute promotes the traditional aims of punishment, the statute is more likely punitive than regulatory. First, we observe that under the Indiana Constitution the primary objective of punishment is rehabilitation, not retribution. "The penal code shall be founded on the principles of reformation, and not of vindictive justice." IND. CONST. art. I, § 18. Second, in addition to deterrence there are other objectives, including the need to protect the community by sequestration of the offender and community condemnation of the offender. *Wallace*, 905 N.E.2d at 381.

It is true that to some extent, the deterrent effect of the registration and notification provisions of the Act is merely incidental to its regulatory function. *Wallace*, 905 N.E.2d at 381. And we have no reason to believe the Legislature passed the Act for purposes of retribution—"vengeance for its own sake." *Id.* Nonetheless it strains credulity to suppose that the Act's deterrent effect is not substantial, or that the Act does not promote "community condemnation of the offender," both of which are included in the traditional aims of punishment. *Abercrombie v. State*, 441 N.E.2d 442, 444 (Ind. 1982). Here, we conclude that the fourth M*endoza–Martinez* factor slightly favors treating the effects of the Act as punitive when applied to Ammons.

### 5. *Application Only to Criminal Behavior*

Under the fifth factor we consider "whether the behavior to which [the Act] applies is already a crime." *Mendoza–Martinez*, 372 U.S. at 168. The fact that a statute applies only to behavior that is already, and exclusively, criminal supports a conclusion that its effects are punitive. *Wallace*, 905 N.E.2d at 382. Although the registration requirement is triggered exclusively by criminal behavior, Ammons' offense, child molestation, was not a registration-triggering offense at the time of its commission in 1988. In this regard, we conclude that the factor supports the conclusion that the Act is punitive in effect as to Ammons.

### 6. *Advancing a Non-Punitive Interest*

We next ask whether, in the words of our supreme court, "an alternative purpose to which [the Act] may rationally be connected is assignable for it." *Mendoza–Martinez,* 372 U.S. at 168-69. This statement is best translated as an inquiry into whether the Act advances a legitimate regulatory purpose. *Wallace*, 905 N.E.2d at 383. Because the Act advances the legitimate regulatory purpose of protecting the public from repeat sexual crime offenders, our cases have consistently treated this factor as non-punitive. *Gonzalez*, 980 N.E.2d at 319. Likewise, here, this factor weighs in favor of treating the effects of the Act as non-punitive. See *id*.

### 7. *Excessiveness in Relation to Articulated Purpose*

[23]    Consideration of the seventh factor, *i.e.* whether the Act "appears excessive in relation to the alternative purpose assigned," centers on whether a registered sex offender "can petition the court for relief from the obligation of continued registration and disclosure." *See Gonzalez*, 980 N.E.2d at 319.

[24]    In *Wallace*, our supreme court recognized that the Act imposes "significant affirmative obligations and a severe stigma on every person to whom it applies" and "exposes registrants to profound humiliation and community-wide ostracism." *Wallace*, 905 N.E.2d at 379-80.  Mindful of such onerous effects, the court highlighted a deficiency of the Act as it then existed, observing:

> In this jurisdiction the Act makes information on all sex offenders available to the general public without restriction and without regard to whether the individual poses any particular future risk.  Indeed we think it significant for this excessiveness inquiry that the Act provides no mechanism by which a registered sex offender can petition the court for relief from the obligation of continued registration and disclosure.  Offenders cannot shorten their registration or notification period, even on the clearest proof of rehabilitation.

*Id*. at 384.  On the same day that it handed down *Wallace*, our supreme court handed down *Jensen*, a plurality decision supporting the proposition that portions of the Act requiring lifetime registration may be applied retroactively if the offender was already required to register at the time of his offense.  *Jensen*, 905 N.E.2d at 394.  In *Jensen*, under the terms of the Act at the time of Jensen's sentencing, he was required to report and register as a sex offender for a period of ten years.  *Id*. at 389.  After his release from prison and probation, Jensen

annually reported and registered as a sex offender. *Id*. During the ten-year reporting period, the local sex offender registration coordinator contacted Jensen and informed him that, due to an amendment of the Act, Jensen would have to register for life as a SVP. *Id*. Jensen filed a motion with the trial court to determine his registration status. *Id*. The trial court found Jensen to be a SVP who must register for life. *Id*.

[25] Jensen appealed the trial court's decision, and a panel of this court found that the application of the amendment to the Act violated state *ex post facto* considerations as applied to Jensen. *Jensen v. State*, 878 N.E.2d 400, 403 (Ind. Ct. App. 2007), *trans. granted*. On transfer, our Supreme Court, using the intents-effects test, determined that the amendment to the Act as applied to Jensen was not punitive in nature, and thus did not run afoul of *ex post facto* considerations. *Jensen*, 905 N.E.2d at 394. *See* also *Lemmon v. Harris*, 949 N.E.2d 803, 812–13 (Ind. 2011) (applying *Jensen* and concluding that a SVP designation with lifetime registration requirements did not violate the *ex post facto* clause).

[26] After the supreme court's decision in both *Wallace* and *Jensen*, the General Assembly responded by amending Indiana Code Section 11-8-8-22 (governing sex offender registration) to address a mechanism by which a SVP can petition the court for relief from the obligation of continued registration and disclosure. By comparison, Indiana Code Section 35–38–1–7.5 (g) (governing findings regarding sexually violent predators) grants relief to SVPs who can demonstrate that they are no longer likely to reoffend. We understand the wording of

Indiana Code Section 35–38–1–7.5(g) to provide offenders with an alternate path to remove their SVP status by showing that they are no longer likely to reoffend.

[27] As stated in the foregoing, SVP requirements were amended in 2006 and 2007. The statutes now provide that offenders who commit certain specified crimes are automatically classified as SVP. *See* Ind. Code § 35–38–1–7.5(b). Ammons was convicted of child molesting and was released from incarceration after June 30, 1994, and thus, under the 2007 Amendment, is a SVP *by operation of law*. However, following the reasoning of the *Jensen* court, we find that Indiana Code section 35-38-1-7.5(g) allowing for an individualized determination based on the likelihood to reoffend after an offender's original ten-year registration requirement is up, makes the Act seem even less punitive as applied to Ammons. In sum, we find that on this seventh factor, the Act leans towards treating the Act as non-punitive as applied to Ammons.

## II. *Balancing the Factors*

[28] Turning to the *Mendoza- Martinez* factors, we are mindful that our task in applying the factors is not simply to count the factors on each side, but to weigh them. *Gonzalez*, 980 N.E.2d at 317. Furthermore, as this court found in *Flanders v. State*, 955 N.E.2d 732, 751 (Ind. Ct. App. 2011), *trans. denied*, we "accorded special weight" to the seventh factor of whether a sanction appears excessive in relation to the alternative purpose assigned to it.

[29] Ammons maintains that his "name could be substituted for [] Wallace's name in the supreme court analysis." (Appellant's Br. p. 8). In *Wallace*, the Indiana supreme court held that the application of the Act to persons whose crimes were committed before the Act's 1994 enactment was unconstitutional as an *ex post facto* law. *See id*. at 374-75. In applying the above mentioned factors, the *Wallace* court concluded that only factor number six—advancing a non-punitive interest—favored treating the registration requirement as non-punitive. "The remaining factors, particularly the factor of excessiveness, point[ed] in the other direction." *Id.* at 384. In this regard, the *Wallace* court concluded that "as applied to Wallace, the Act violates the prohibition on *ex post facto* laws contained in the Indiana Constitution because it imposes burdens that have the effect of adding punishment beyond that which could have been imposed when his crime was committed." *Id*. at 384.

[30] As discussed above, we concluded that factor one, two, four, and five of the *Mendoza-Martinez* factors were punitive as applied to Ammons. The remaining factors leaned towards treating the Act as non-punitive. As this court found in *Flanders* we accord great weight to the seventh factor of whether a sanction appears excessive in relation to the alternative purpose assigned to it. Although Ammons argues that his case is more comparable to *Wallace*, our review of the seventh factor, yields a different result. In *Wallace*, it was significant that the Act provided no mechanism by which a SVP can petition the court for relief from the obligation of continued registration and disclosure; nor shorten their

registration or notification period, even on the clearest proof of rehabilitation. *Wallace,* 905 N.E.2d at 384.

[31] As we noted above, effective July 1, 2006, the legislature amended the Act requiring lifetime registration for a defendant whose offense qualifies the defendant as a SVP. Ind. Code § 11-8-8-19 (2006). Child molesting is a registration-triggering offense and our courts have consistently held that the Act advances a legitimate regulatory purpose to protect the public from repeat sex offenders, and most important—in light of the seventh factor—Ammons may petition the trial court in the future for review of his dangerousness and rehabilitation status at that time. *See* I.C. § 35-38-1-7.5(g); *Lemmon*, 949 N.E.2d 812-13.

[32] Like *Jensen*, and unlike *Wallace*, Ammons can avail himself of Indiana Code section 35-38-1-7.5(g), by predicating his request for relief on the grounds that he has been rehabilitated and presents no risk to the public. Moreover, our supreme court found in both *Jensen* and *Lemmon* that the seventh factor was non-punitive, and in light of that fact, the defendants in those cases had not carried their burden of demonstrating that as applied to them, the Act violates the *Ex Post Facto* Clause. While several of the factors lean toward treating the Act as punitive as applied to Ammons, our determination must be governed by the majority opinions in *Lemmon* and *Jensen*. *Wallace* does not compel reversal of the trial court's denial of Ammons' petition to remove his designation as a SVP.

## CONCLUSION

In light of the foregoing, we conclude that Ammons has not carried his burden of demonstrating that as applied to him the Act violates the Indiana constitutional prohibition against ex post facto laws. In this regard, we affirm the trial court.

Affirmed.

Bailey, J. concurs

Barnes, J. dissents with separate opinion

| | |
|---|---|
| Kevin A. Ammons,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | Court of Appeals Case No.<br>45A03-1411-CR-394 |

**Barnes, Judge, dissenting.**

I respectfully dissent. I do not believe that requiring Ammons to register as a sex offender is consistent with the Indiana Constitution's Ex Post Facto Clause as interpreted by our supreme court in *Wallace v. State*, 905 N.E.2d 371 (Ind. 2009). As such, I conclude that the trial court should have granted Ammons's petition to be removed from Indiana's sex offender registry.

Although the majority proceeds to analyze Ammons's registration requirement under the full seven-part "intent-effects" test for Ex Post Facto claims, I do not

believe it is necessary to do so, nor did either of the parties do so in their briefs. Ammons's 2011 Iowa conviction for failing to register as a sex offender was based upon his 1988 Indiana conviction for child molesting. Putting aside the question of the effect of the Iowa conviction for the moment, Ammons's 1988 conviction, six years before enactment of Indiana's sex offender registry, places him on all fours with Wallace's holding. No further analysis in that regard is required, I believe. The majority cites in part Indiana Code Section 35-38-1-7.5(g)'s provision for petitioning for removal of a sexually violent predator determination as distinguishing this case from *Wallace*. However, this statutory provision was already in effect in 2009 and noted by the *Wallace* court, and it did not alter its analysis and conclusion that requiring a defendant to be placed on the sex offender registry for a crime committed prior to the registry's creation violates the Indiana Constitution's Ex Post Facto Clause. *See Wallace*, 905 N.E.2d at 384 n.14. I would also note that although the majority cites the addition of Indiana Code Section 11-8-8-22 and its procedures for removal from the sex offender registry, that statute was enacted for the purpose of addressing Ex Post Facto claims such as Ammons's and is not an independent basis for removal from the registry. *See Gonzalez v. State*, 980 N.E.2d 312, 320 (Ind. 2013).

Additionally, I disagree with the majority that this case is like *Jensen v. State*, 905 N.E.2d 384 (Ind. 2009). In that case, the court held that there was no Ex Post Facto violation with respect to a defendant who committed a crime requiring registration after the registration's enactment, but the legislature

subsequently amended the registration requirements to make them more onerous. *Jensen*, 905 N.E.2d at 394. Here, however, Ammons committed his crime before there was any registration requirement, which puts him squarely within *Wallace* and not *Jensen*.

[40] The wrinkle in this case, of course, is that Ammons was convicted of failing to register as a sex offender in Iowa after the Indiana registry was created and before he moved back to Indiana—which conviction ordinarily would require registration in Indiana. But that Iowa conviction "piggybacked" upon Ammons's pre-registry offense in Indiana. The majority seems to agree with Ammons—as do I—that for purposes of an Ex Post Facto analysis, the relevant date here is 1988—the year of Ammons's original Indiana conviction—and not 2013, when he moved back to Indiana. The majority also cites *Burton v. State*, 977 N.E.2d 1004 (Ind. Ct. App. 2012), *trans. denied*. In that case, the defendant committed a sex crime in Illinois in 1987, before there was a sex offender registry in either Illinois or Indiana. Later, the defendant was twice convicted in Illinois of failing to register as a sex offender; unlike in Indiana, Illinois law does not bar retroactive sex offender registry requirements. The defendant then moved to Indiana and was charged with failing to register as a sex offender, based upon his Illinois convictions for failing to register.

[41] On appeal, this court held that the defendant while living in Indiana was entitled to the protections of the Indiana Constitution and, thus, under *Wallace* he could not be required to register as a sex offender in Indiana, even if he could be forced to do so in Illinois. *Burton*, 977 N.E.2d at 1009. We also noted

that, despite the defendant's Illinois conviction for failing to register as a sex offender that was entered after creation of Indiana's sex offender registry, the relevant date for purposes of *Wallace* was that of the original conviction that led to the registry requirement, which occurred prior to the Indiana registry's creation. *Id.* Although the State asks us to reconsider *Burton*, I voted to concur in that case, and I adhere to that vote. I also believe it is virtually indistinguishable from the present case. That is, despite the 2011 Iowa conviction for failing to register as a sex offender, that conviction stems from Ammons's pre-registry Indiana conviction for child molesting. And, so long as Ammons lives in Indiana, he is entitled to the protections of Indiana's Constitution as interpreted by *Wallace*.

[42]    Applying *Burton* and *Wallace*, I believe requiring Ammons to register as a sex offender in Indiana violates the Indiana Constitution. I vote to reverse the denial of Ammons's petition to be removed from the Indiana sex offender registry.