Carolyn BOSS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–1002–CR–225.

Court of Appeals of Indiana.

Feb. 18, 2011.

18

Suzanne Saint John, Ruth Johnson, Marion County Public Defender Agency, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Carolyn Boss brings this interlocutory appeal challenging the trial court's denial of her motion to dismiss the charging information on double jeopardy grounds. Boss presents one issue for our review: Did the trial court properly deny Boss's motion to dismiss the charging information when it concluded that the enforcement of various city ordinances did not constitute punishment and that the current prosecu-

tion was therefore not a second prosecution for the same offense?

We affirm.

Because no trial has yet occurred, we glean the facts from the probable cause affidavit. Boss maintained three dogs on her property.[1] Carrolle Bales was walking in an alley near Boss's property when the dogs attacked her. One of the dogs latched onto Bales's left arm and the other two dogs bit her legs until she fell to the ground. The dogs continued to maul Bales until her friend, Thomas Wimberly, arrived to assist her. At that point, the dogs turned on Wimberly. Boss was unaware that the dogs had gotten out of the yard until a stranger knocked on her door and informed her that her dogs were attacking people in the alley. Boss went outside and was able to confine the dogs. Both Bales and Wimberly suffered serious bodily injury to their upper and lower extremities. After the attack, Boss could not provide proof of rabies vaccinations for the dogs. Also, officers responding to the attack noted that there was inadequate shelter for two of the dogs and that one of the dogs was inappropriately chained.

On November 8, 2008, the City of Indianapolis issued Boss five citations for each of the dogs, resulting in a total of fifteen citations for ordinance violations. On December 15, 2008, Boss admitted to twelve of the fifteen violations and the remaining three allegations were dismissed. The specific ordinances that Boss admitted violating follow:

*Sec. 531–102.*—Animals at large prohibited; penalties.

(a) It shall be unlawful for the owner or keeper of an animal to cause, suffer, or allow that animal which is owned or kept by such person to be at large in the city.

\* \* \*

(c) If, while the animal is at large in violation of this section at a location other than its owner's or keeper's property or in the public right-of-way, it:

(1) Attacks another animal; or

(2) Chases or approaches a person in a menacing fashion or apparent attitude of attack;

then the violation shall be subject to the enforcement procedures and penalties provided in section 103–3 [2] of the Code, and the fine imposed shall not be less than two hundred and fifty dollars ($250.00), or five hundred dollars ($500.00) if another animal or person is

---

1. The dogs belonged to Boss's son and Boss cared for them while her son was incarcerated.

2. *Sec. 103–3.*—General penalties for violations of Code.

 (a) Whenever in any chapter, article, division or section of this Code, or of any ordinances amendatory thereof or supplemental thereto:

 (1) The doing of any act, or the omission to do any act or to perform any duty, is declared to be a violation of this Code, or of any such amendatory or supplemental ordinance, or of any provision thereof, or is declared to be unlawful; and

 (2) If there shall be no fine or penalty *otherwise specifically prescribed or declared* for any such violation, or for doing or for omitting to do any such act or to perform any such duty;

any person found to have committed any such violation shall be fined, by way of a penalty therefor, an amount not exceeding any limitation under IC 36–1–3–8 for each such violation, act or omission.

 (b) In addition to the foregoing penalty, the city may enjoin or abate any violation of this Code by appropriate action.

Boss did not provide a copy of this ordinance in her appendix. We therefore obtained the text of this ordinance from the Indianapolis—Marion County, Indiana, Code of Ordinances website found at *http://library.municode.com/ HTML/12016/book.html* (last visited January 5, 2011).

injured as a result of the animal's actions.

*Appellant's Appendix* at 94.[3]

Sec. 531–109.—Owner responsibility for animal attacks.

(a) It shall be unlawful for an owner or keeper of an animal to allow that animal to attack and injure a person who did not provoke the animal prior to the attack. . . .

\*　　\*　　\*

(c) A person who violates any provision of this section shall be *punishable* as provided in section 103–3 of this Code; provided, however, a fine imposed for any such violation shall not be less than five hundred dollars ($500.00). If the violation results in the animal causing serious injury to any person, the court upon request shall order the animal forfeited and/or destroyed.

*Id.* at 95 (emphasis supplied).[4]

Sec. 531–301.—Antirabies vaccinations required for dogs and cats.

(a) It shall be unlawful to keep a dog or cat over the age of three (3) months in the city unless each cat or dog is immunized against rabies by a vaccination performed by a veterinarian and the period of immunization specified by the veterinarian performing the vaccination has not expired.

(b) A violation of this section shall be *punishable* as provided in section 103–3 of this Code; provided, however, the fine for any such violation shall not be less than one hundred dollars ($100.00).

*Id.* at 96 (emphasis supplied).[5]

Sec. 531–401(a) sets forth the general requirements for animal care and treatment and mandates that "[e]very owner or keeper of an animal kept in the city shall see that such animal" is cared for and treated in accordance with the provisions contained therein. *Id.* at 97.[6] Subsection (d) spells out the ramifications for a violation thereof:

A person who violates any provision of this section shall be *punishable* as provided in section 103–3 of this Code; provided, however, the fines imposed for any such violations shall be as follows:

(1) For the first violation, not less than twenty-five dollars ($25.00); and

(2) For the second or subsequent violations, not less than two hundred dollars ($200.00), and the court upon request shall order forfeiture or other disposition of the animal involved. A judgment by the court which orders forfeiture or other disposition of the animal by the city or any third party shall include as a part of such judgment adequate provisions for the collection of costs of forfeiture or impoundment from the person found in violation.

*Id.* at 97–98 (emphasis supplied).[7]

Following Boss's admissions to the violations, the court imposed fines totaling $1150.00 and court costs of $114.00. Addi-

---

**3.** It is not clear whether this version of the ordinance was in effect at the time of the instant violation. We observe that the ordinance was amended in 2008 and 2009 and the current version is, in certain respects, substantially different than the version of the ordinance contained in Boss's appendix. Because no argument is made that a more current version of the ordinance was in effect at the time of the instant violations, we will

proceed with our analysis using the text of the ordinances found in Boss's appendix.

**4.** *See* footnote 3, *infra.*

**5.** *See* footnote 3, *infra.*

**6.** *See* footnote 3, *infra.*

**7.** *See* footnote 3, *infra.*

tionally, Boss voluntarily surrendered the three dogs to the City of Indianapolis and agreed "to be permanently enjoined from allowing an animal kept by her to be at large in the city or to attack and injure a person without being provoked" and "to be permanently enjoined from violating [§ ] 531–401. . . ." *Appellant's Appendix* at 91–92.

On December 8, 2008, the State charged Boss by information with six counts of dog biting resulting in serious bodily injury[8] as class A misdemeanors and six counts of harboring a non-immunized dog[9] as class B misdemeanors. The charges stemmed from the same incident involving Boss's dogs from which the ordinance violations arose. On July 16, 2009, Boss filed a verified motion to dismiss the charging information on grounds that the prosecution was barred by double jeopardy principles. The State objected to Boss's motion to dismiss and the trial court held a hearing on Boss's motion on November 1, 2009. The trial court denied Boss's motion to dismiss, concluding that the ordinance enforcement proceedings were civil in nature and therefore, the present prosecution did not violate double jeopardy principles. Following its decision, the trial court granted Boss's request to certify the issue for interlocutory review. On April 12, 2010, this court granted Boss's motion to accept jurisdiction over this interlocutory appeal.

■ We begin by noting that it has long been established that prosecution for the violation of a city ordinance in which a monetary penalty only is sought is a civil and not a criminal action. *See Biedinger v. City of East Chicago*, 129 Ind.App. 42, 154 N.E.2d 58 (1958); *Clevenger v. Town of Rushville*, 90 Ind. 258 (1883). Here,

this is precisely what we have before us. The City of Indianapolis issued fifteen citations for ordinance violations against Boss and sought monetary penalties for violation thereof. Boss admitted to the twelve of the violations and was fined in accordance with the pertinent ordinance provisions.

Notwithstanding the historical civil nature of the ordinance violation proceedings against Boss, Boss argues that in this case the ordinance enforcement proceedings constituted punishment and therefore, prosecution by the State is barred by double jeopardy principles. Boss thus maintains that the trial court erred in denying her motion to dismiss the criminal charges against her.

■ We review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion. *State v. Davis*, 898 N.E.2d 281 (Ind.2008). The trial court may dismiss a charging information if "[t]he prosecution is barred by reason of a previous prosecution." Ind. Code Ann. § 35–34–1–4(a)(7) (West, Westlaw through 2010 2nd Regular Sess.). In other words, a charging information may be dismissed if it places a defendant in jeopardy twice for the same offense. Whether a prosecution constitutes double jeopardy is a question of law that we review *de novo*. *See Goldsberry v. State*, 821 N.E.2d 447 (Ind.Ct.App.2005).

■ The federal Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. It has long been recognized that the clause "protects only against the imposition of multiple *criminal* punishments for the same offense . . . and then

8. Ind.Code Ann. § 15–20–1–4 (West, Westlaw through 2010 2nd Regular Sess.).

9. Ind.Code Ann. § 35–46–3–1 (West, Westlaw through 2010 2nd Regular Sess.).

only when such occurs in successive proceedings...." *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (emphasis in original) (citations omitted). It is therefore well established that the Fifth Amendment " 'does not prohibit the imposition of all sanctions that could, "in common parlance," be described as punishment.' " *Id.* at 98–99, 118 S.Ct. 488 (quoting *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 549, 63 S.Ct. 379, 87 L.Ed. 443 (1943)). For instance, historically, monetary penalties have not been viewed as punishment. *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488. Indeed, imposition of a civil fine and a criminal sanction for the same transgression is permissible. *Id.*

 Whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction. *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). In making this determination, we will apply the intent-effects test. That is, we must first ask whether the legislature, " 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.' " *Hudson v. United States,* 522 U.S. at 99, 118 S.Ct. 488 (quoting *United States v. Ward,* 448 U.S. at 248, 100 S.Ct. 2636). If the intent was to impose punishment, then that ends the inquiry, because punishment results. *See Wallace v. State,* 905 N.E.2d 371 (Ind. 2009) (citing *Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003)). Even if it is determined that the legislature has indicated an intent to establish a civil penalty, " 'we have inquired further whether the statutory scheme was so punitive either in purpose or effect' " so as to transform the intended civil remedy into a criminal penalty. *Hudson v. United States,* 522 U.S. at 99, 118 S.Ct. 488 (quoting

*United States v. Ward,* 448 U.S. at 248–49, 100 S.Ct. 2636).

 Boss contends that the text of the ordinances themselves reflects an intent that the ordinances serve as punishment. In support of her argument, Boss points out that Secs. 531–109, 531–301, and 531–401 use the term "punishable" to describe the ramifications for a violation thereof. Boss also argues that the nature of the proceedings is suggestive of punishment. Specifically, Boss likens the proceedings to a guilty plea situation in the criminal context in that she was offered a deal in exchange for her admission. Further, Boss notes the resolution of the matter was described as "Disposition by Guilty Plea." *Appendix* at 93. For reasons explained below, we conclude that the ordinances were intended to be a civil remedy, not a criminal penalty.

The Indiana General Assembly, through statutes, has both authorized local units of government to create ordinances and established the manner in which those ordinances are to be enforced. *See* Ind.Code Ann. § 36–1–4–11 (West, Westlaw through 2010 2nd Regular Sess.) (permitting units to adopt and enforce ordinances); I.C. § 36–1–6–3 (West, Westlaw through 2010 2nd Regular Sess.) (proscribing methods for enforcement of ordinances). The General Assembly specifically withheld from units, however, the power to "prescribe a penalty for conduct constituting a crime or infraction under statute." I.C. § 36–1–3–8 (West, Westlaw through 2010 2nd Regular Sess.). The General Assembly also denied local government units "the power to prescribe a penalty of imprisonment for an ordinance violation." *Id.* Where a fine is prescribed for an ordinance violation, the General Assembly limited the amount of the fine that may be imposed to $2500.00 for a first violation and $7500.00 for any subsequent violation. I.C. § 36–1–3–

8(a)(10)(B). In creating the mechanism for creation and enforcement of ordinances by local units of government, and more specifically through the limits placed on local units, the General Assembly made clear its intent that the ordinances created by local units of government (here, the Indianapolis/Marion County City–County Council) were to be civil in nature and not a mechanism for criminal punishment.

We reject Boss's argument that the local unit's use of the term "punishable" in three of the ordinances necessarily indicates an intent that those ordinances serve a punitive purpose. That term is not descriptive of the sanction, but merely serves to link the conduct to a fine for a violation. To be sure, the ordinances that employ that term provide that a violation of the ordinance is "punishable *as provided in section 103–3* " which in turn sets forth the penalty as a fine. To accept Boss's interpretation of the ordinances would essentially elevate form over substance. We find nothing in the mechanism or the ordinances themselves that suggest a punitive intent.

Finally, with regard to the nature of the proceedings, the General Assembly has set forth procedures for enforcing ordinances that are plainly civil in nature. An action to enforce an ordinance begins with a complaint and summons, must conform to the Indiana Rules of Trial Procedure, and the plaintiff's case need only be proved by a preponderance of the evidence. *See* Ind. Code Ann. § 34–28–5–1(d) through (f) (West, Westlaw through 2010 2nd Regular Sess.). We find that describing Boss's admission to the violations as a disposition by guilty plea is simply a matter of indicating how the matter was resolved, not an indication that the General Assembly intended the ordinances to serve a punitive purpose.

In light of the General Assembly's limitation on the authority to pass ordinances duplicative of statutes defining criminal liability and limits on the types and amount of sanctions that may be imposed for violations, the text of the ordinances themselves, and the mechanism established by the General Assembly for enforcement of ordinances, we conclude that the General Assembly intended that the ordinances at issue are civil in nature, not punitive.

 Having concluded that the ordinances in question are intended to be civil in nature, we now turn to the second phase of the analysis. In assessing the purpose and effects of the ordinances, we look to seven factors identified by the U.S. Supreme Court in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Those factors are:

(1) Whether the sanction involves an affirmative disability or restraint, (2) whether it has historically been regarded as a punishment, (3) whether it comes into play only on a finding of *scienter*, (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether an alternative purpose to which it may rationally be connected is assignable for it, and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 168–69, 83 S.Ct. 554. "It is important to note, however, that these factors must be considered in relation to the statute on its face, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson v. United States*, 522 U.S. at 100, 118 S.Ct. 488 (internal quotation marks omitted).

 The fines and injunction imposed against Boss do not impose an affirmative disability or restraint on Boss. Boss ac-

knowledges that traditionally, fines have not been deemed an affirmative disability or restraint. *See Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488. As to the injunction, it no more imposes a restraint upon Boss than that imposed by the ordinances themselves. In agreeing to the injunction, Boss essentially agreed to comply with the mandates set forth in the ordinances. Boss must not allow animals to roam free and attack and injure a person without provocation. Boss also agreed to properly care for and treat animals in her care. These restraints are applicable to all persons who own animals. This first *Mendoza–Martinez* factor does not suggest that the ordinances have a punitive effect.

With regard to the second factor, Boss acknowledges that historically, fines have not been regarded as punishment. *See Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488.

We next consider the third factor—whether the ordinance violations require a finding of *scienter.* "The existence of a scienter requirement is customarily an important element in distinguishing criminal from civil statutes." *Kansas v. Hendricks,* 521 U.S. 346, 362, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). If a sanction is not linked to a showing of *mens rea,* it is less likely to be intended as a punishment. *Wallace v. State,* 905 N.E.2d 371.

Boss argues that words such as "allow," (*see* § 531–102(a), § 531–109(a)), "keep," (*see* § 531–301(a)), and "shall see" (*see* § 531–401) as used in the various ordinances "suggest an affirmative action requiring cognitive awareness of the acts involved." *Appellant's Brief* at 14. The words singled out by Boss are not words requiring a finding of *scienter.* They are words denoting voluntary conduct, not that one must know or intend a particular result. To "allow" something to occur is to

neglect to restrain or prevent the occurrence. To "keep" in this context is to maintain. That an owner or keeper of an animal "shall see" that the animal is properly cared for and treated explains the expectations of the owner or keeper of the animal. None of the words identified by Boss require a finding of *scienter* to support a violation of the ordinance. The ordinances at issue impose strict liability for violations thereof.

Fourth, we consider whether the ordinances promote the traditional aims of punishment, i.e., retribution and deterrence. Boss argues that the "significant" fine involved, in addition to the increased fine for second and subsequent violations, serve as a deterrent. *Appellant's Brief* at 15. Therefore, Boss argues that the effect of the ordinances should be viewed as punitive.

It has been noted that all penalties have some deterrent effect that "may serve civil as well as criminal goals." *United States v. Ursery,* 518 U.S. 267, 292, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996); *see also Hudson v. U.S.,* 522 U.S. 93, 118 S.Ct. 488. This in and of itself is not sufficient to declare that the sanction imposed is criminal. *See Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488 (imposition of fines exceeding $10,000 for each three petitioners not deemed punitive). Boss has failed to establish that the effect of the fines served primarily retributive purposes.

With regard to the fifth factor, Boss argues that the conduct prohibited by the ordinances is duplicative of that criminalized by Indiana statutes. Boss is correct the facts that underlie the ordinance violations also give rise to the criminal charges. This fact is insufficient to render the money penalties for the ordinance violations criminally punitive. As noted above, impo-

sition of a civil fine and a criminal sanction for the same transgression is permissible. *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488.

With regard to the sixth *Mendoza–Martinez* factor, we note that an alternative purpose for the ordinances is promotion of public health and safety. This is a legitimate regulatory purpose. This factor weighs in favor of finding the ordinances are non-punitive in nature.

Finally, with regard to the seventh factor, we disagree with Boss's characterization of the fines as "excessive." *Appellant's Brief* at 16. To be sure, the fines of anywhere from $25.00 to $500.00 depending on the violation are minimal and essentially approximate the cost of reimbursement for enforcing the ordinances to promote public health and safety. Boss has not presented any evidence to the contrary. This factor weighs in favor of finding the ordinances to have a non-punitive effect.

Considering all of the *Mendoza–Martinez* factors, we conclude that there is little evidence, much less the clearest proof, that the ordinance enforcement actions serve a punitive purpose. Therefore, this prosecution does not place Boss in jeopardy a second time for the same offense. Finding no violation of double jeopardy principles, we affirm the trial court's denial of Boss's motion to dismiss the charging information.

Judgment affirmed.

MATHIAS, J., concurs.

MAY, J., concurs in result with separate opinion.

MAY, Judge, concurring in result.

The majority concedes "the facts that underlie the ordinance violations also give rise to the criminal charges," op. at 24, but

finds Boss was not subjected to double jeopardy because "imposition of a civil fine and a criminal sanction for the same transgression is permissible." *Id.* at 22. I cannot find fault with the majority's methodical analysis of the *Mendoza–Martinez* factors, especially in light of the *Hudson* statement that only the clearest proof will suffice to "override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." 522 U.S. at 100, 118 S.Ct. 488. As there is case law to support the majority's double jeopardy analysis, I must reluctantly concur in the result.

I nevertheless feel compelled to address why I find this criminal prosecution unjust. While Boss may not have been subjected to double jeopardy, the nature and sequence of these proceedings leaves me wondering whether this subsequent criminal prosecution by the State should be permissible in a system that presumes a defendant's innocence. The City fined Boss under ordinances that appear invalid, and the resolution of the ordinance proceeding, via Boss's admission of guilt when she had no counsel, could effectively deprive her in this subsequent criminal prosecution of the presumption of innocence and her right to effective assistance of counsel.

## 1. *Validity of the Ordinances*

As the majority notes, our legislature "specifically withheld from [local government] units ... the power to prescribe a penalty for conduct constituting a crime or infraction under statute." Op. at 22 (citing Ind.Code § 36–1–3–8). The majority concedes "the facts that underlie the ordinance violations also give rise to the criminal charges," *id.* at 24, and the ordinances impose a "monetary *penalty*" for their violations, *id.* at 21 (emphasis added). If those statements by the majority are cor-

rect, then the ordinances pursuant to which Indianapolis fined Boss are invalid.

Our Indiana Supreme Court addressed the predecessor to our current Ind.Code § 36–1–3–8 in deciding the question " 'May a city of Indiana lawfully enforce an ordinance; [sic] which duplicates penal statutes of the State of Indiana?' " *Mitsch v. City of Hammond,* 234 Ind. 285, 292, 125 N.E.2d 21, 24 (1955), *reh'g denied.* After noting our legislature enacted the predecessor statute in 1881, our Supreme Court said:

> [S]ince its enactment it has been the holding of this court, that cities and towns are forbidden thereby from punishing by ordinance any act which is made a public offense by statute and that such an ordinance is void. . . . That the ordinance follows and agrees with the statute which makes the act a criminal offense and therefore it cannot be unlawful as suggested by appellee, is a sort of 'confession and avoidance' reasoning. The confession we may accept, but such confession does not avoid the destructive effect of the condemning statute.

*Id.*

The Indianapolis ordinances under which Boss was penalized appear invalid because they do exactly what our Supreme Court said Ind.Code § 36–1–3–8 prohibits—they prescribe "a penalty for conduct constituting a crime or infraction under statute" and therefore were outside the power Indianapolis had to enact ordinances. *See id.*

For example, Boss was penalized for violating ordinance Sec. 531–102–Animals at large prohibited, which provides:

(a) An owner or keeper of an animal commits a violation of the Code if that animal is at large in the city.

\* \* \* \* \* \*

(c) If, while the animal is at large in violation of this section at a location other than its owner's or keeper's property or in the public right-of-way, it:

(1) Attacks another animal; or

(2) Chases or approaches a person in a menacing fashion or apparent attitude of attack;

then the violation shall be subject to the enforcement procedures and penalties provided in section 103–3 of the Code, and the fine imposed shall not be less than two hundred and fifty dollars ($250.00), or five hundred dollars ($500.00) if another animal or person is injured as a result of the animal's actions.

She was also penalized under Sec. 531–109–Owner responsibility for animal attacks, which provides: "An owner or keeper of an animal commits a violation of the Code if that animal attacks and injures a person who did not provoke the animal prior to the attack." [10]

Those two ordinances prohibit exactly the same conduct as does a statute under which Boss is now charged, *i.e.,* allowing a dog to run loose and bite someone:

Except as provided in subsection (b), the owner of a dog commits a Class C misdemeanor if:

(1) the owner recklessly, knowingly, or intentionally fails to take reasonable steps to restrain the dog;

(2) the dog enters property other than the property of the dog's owner; and

(3) as the result of the owner's failure to restrain the dog, the dog bites or attacks

---

**10.** Sec. 103–3 of the Indianapolis ordinances provides generally that when an ordinance is violated the violator may be fined and/or enjoined.

another person without provocation, resulting in bodily injury to the other person.

Ind.Code § 15–20–1–4(a).

Similarly, the rabies immunization ordinance Boss admitted violating penalizes the same conduct punished by Ind.Code § 35–46–3–1. The Indianapolis ordinance requiring anti-rabies vaccinations for dogs and cats provides:

> (a) It shall be unlawful to keep a dog or cat or to provide food, water or shelter to a colony of free-roaming cats over the age of three (3) months in the city unless each cat or dog is immunized against rabies by a vaccination performed by a veterinarian and the period of immunization specified by the veterinarian performing the vaccination has not expired.

Sec. 531–301. The criminal statute under which Boss is now charged prohibits the same conduct, i.e., failing to immunize one's dog against rabies:

> A person who knowingly or intentionally harbors a dog that is over the age of six (6) months and not immunized against rabies commits harboring a non-immunized dog, a Class C infraction. However, the offense is a Class B misdemeanor if the dog causes bodily injury by biting a person.

Ind.Code § 35–46–3–1.

Indianapolis prescribed, and imposed on Boss, penalties for "conduct constituting a crime or infraction under statute," which conduct is now the basis for the State's criminal prosecution. The language of Ind.Code § 36–1–3–8(a)(8) is unambiguous: a local government unit "does not have . . . [t]he power to prescribe a penalty for con-

duct constituting a crime or infraction under statute." Thus, I believe the City did not have the authority to enact the ordinances under which Boss was first penalized in the form of fines and costs totaling over $1200.[11] Moreover, for reasons I explain below, I believe penalizing Boss twice for these violations is unjust.

### 2. *Boss' Constitutional Rights*

Even if Boss was not subjected to double jeopardy, I am concerned that our decision effectively deprives Boss of her presumption of innocence and of any meaningful right to counsel in the criminal prosecution.

The presumption of innocence follows a defendant who is charged with a crime until, *by the evidence,* she is proven guilty beyond a reasonable doubt. *Riggs v. State,* 237 Ind. 629, 630, 147 N.E.2d 579, 580 (1958). But "[o]nce a person has entered a plea of guilty . . . the presumption of innocence has been extinguished."[12] *State ex rel. Dorton v. Circuit Court of Elkhart County,* 274 Ind. 373, 376, 412 N.E.2d 72, 74 (1980). Boss' admission she violated the City ordinances, which admission she made when she, as an indigent, had no counsel, might as a practical matter "extinguish" her presumption of innocence as she faces criminal charges brought by the State.

She might also be deprived of a meaningful right to counsel in the criminal prosecution. Much of the reasoning in the majority's double jeopardy analysis is based on the premise the penalty for the ordinance violations is civil, so Boss is not

---

11. Although I believe the civil ordinances are invalid, Boss is before us on an appeal from the trial court's refusal to dismiss the State's criminal proceedings, and we may not overturn the civil judgment against her in this collateral proceeding.

12. The City characterized the resolution of Boss' ordinance violation as "case disposed by guilty plea admission (i.e. agreed judgment)." (App. at 93.)

being subjected to "multiple *criminal* punishments for the same offense." See op. at 21 (quoting *Hudson*, 522 U.S. at 99, 118 S.Ct. 488). True enough. But in such a civil proceeding, the person accused of an ordinance violation typically will not have the right-to-counsel protections our state and federal constitutions provide in criminal prosecutions.

The State is poised to obtain a conviction based solely on admissions Boss made in the course of proceedings to enforce an apparently-invalid city ordinance. In that proceeding Boss was not represented by counsel, and as an indigent [13] likely could not have obtained counsel.

Our Indiana constitution provides a right to counsel in "all *criminal* prosecutions," Ind. Const. Art. 1 § 13 (emphasis supplied); the Sixth Amendment to the United States constitution also establishes the right to counsel "[i]n all criminal prosecutions." But those rights have little meaning where, as in the case before us, the State is in a position to pursue a criminal prosecution based on admissions a defendant made in an ordinance-violation proceeding where no such right-to-counsel protection was available to her.

The rights embodied in the Sixth Amendment protect the fundamental right to a fair trial. *Poynter v. State*, 749 N.E.2d 1122, 1125–26 (Ind.2001) (citing *Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied* ). "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *Id.* (quoting *United States v. Cronic*, 466 U.S. 648, 654, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). Because the average defendant does not have the professional legal skills to protect

herself at trial, her choice to appear without counsel must be made intelligently. *Slayton v. State*, 755 N.E.2d 232, 235 (Ind. Ct.App.2001) (citing *Johnson v. Zerbst*, 304 U.S. 458, 462–64, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

In a civil case, appointed counsel is available to an indigent person only under "exceptional circumstances." Ind.Code § 34–10–1–2(b). If the court is satisfied that a person does not have sufficient means to prosecute or defend the action, the court "shall admit the applicant to prosecute or defend as an indigent person" and "may, *under exceptional circumstances,* assign an attorney to defend or prosecute the cause." (Emphasis supplied.)

The factors a court may consider in determining whether there are "exceptional circumstances" include the likelihood the applicant will prevail on the merits of the claim or defense and the applicant's ability to investigate and present the claim or defense without an attorney, given the type and complexity of the facts and legal issues in the action. *Murfitt v. Murfitt*, 809 N.E.2d 332, 334 (Ind.Ct.App.2004). Those factors do not suggest Boss would have been appointed counsel even if she was aware she could make such application. In any event, the record reflects Boss was not represented by counsel when, in the ordinance proceedings, she admitted factual allegations identical to those the State is now bringing in its criminal prosecution.

It appears Boss was subjected to a money penalty under an ordinance that is invalid, and will now be deprived of her presumption of innocence and of meaningful assistance of counsel as the State pursues her criminal prosecution. That is

---

**13.** The chronological case summary indicates Boss was found indigent by the trial court.

She is represented on appeal by the Marion County Public Defender Agency.

wrong, even if the State can avoid double jeopardy violations by characterizing the ordinance violation penalties as having no "punitive effect." (Br. of the Appellee at 8.) It violates the spirit of numerous constitutional rights intended to protect the innocent in criminal proceedings.

As I cannot find the trial court abused its discretion in denying Boss' motion to dismiss on double jeopardy grounds, I am constrained to concur in the result.