# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**KAREN CELESTINO-HORSEMAN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**ALEXANDER WILL**
Chief Litigation Counsel

**TRAVIS E. SHIELDS**
Assistant Corporation Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WAYNE BRANT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A05-1201-OV-12 |
| | ) | |
| CITY OF INDIANAPOLIS, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Shannon Logsdon, Judge Pro Tempore
Cause No. 49F12-1109-OV-036992

**September 12, 2012**

**OPINION - FOR PUBLICATION**

**BAKER, Judge**

In this case, we consider whether a pet owner with four barking dogs that annoy only one of his neighbors creates a sufficient nuisance to be in violation of a local noise ordinance. We conclude that the plain, ordinary, and usual meaning of the term "persons" as used in the ordinance necessitates our holding that the complaints of just one neighbor are insufficient.

Appellant-defendant Wayne Brant appeals the trial court's ruling that he violated a local noise ordinance enforced by appellee-plaintiff, the City of Indianapolis (City). On appeal, Brant raises three issues, which we consolidate and restate as: (1) whether the plain and ordinary meaning of the term "persons" in the ordinance requires a finding that multiple persons were seriously annoyed or disturbed in order for a violation to have occurred; and (2) whether the ordinance is unconstitutionally vague as applied because its definition lacks an objective reasonableness standard.

We conclude that the trial court lacked sufficient evidence to find Brant in violation of the noise ordinance. Because we find this issue dispositive, we reverse the trial court's ruling without reaching Brant's constitutionality claim.

<u>FACTS</u>

Brant and his mother Betty Wilson live at 9037 East 12th Street in Indianapolis. They have four dachshunds. Marilyn Annette Moore lives two parcels down from Brant and Wilson at 9135 East 12th Street. Moore also owns the house at 9131 East 12th Street, which is located between her residence and that of Brant and Wilson, and she uses this house as a rental property. Moore maintains a daily log of all the goings-on in the

2

neighborhood that bother her and frequently calls law enforcement and other municipal agencies when she identifies what she believes to be a violation of the law.

On at least one occasion, Moore called the authorities to report that the dogs at Brant's residence were continuously barking and interfering with her ability to enjoy her property. In September 2011, Brant received a citation from the City for allegedly violating section 531-204(a) of the Revised Code of the Consolidated City and County (Revised Code), which provides:

> It shall be unlawful for a person to own or keep any animal which by frequent or habitual howling, yelping, barking, screeching, other vocalization or otherwise shall cause serious annoyance or disturbance to persons in the vicinity.

On January 4, 2012, a bench trial was held during which Moore, Brant, and several neighbors testified. Moore, as the City's only witness, testified that Brant's dogs "are out for many minutes per day barking at the house wanting to get back in." Tr. p. 9. She testified that the dogs may bark continuously "for fifteen minutes to a half a day." Id. at 22. As to how the barking seriously annoys or disturbs her, Moore testified that when she is in her backyard, she cannot hear her cellular telephone ring or enjoy her gardening because of the "constant noise and harassment from [the] dogs." Id. at 23. She also stated that she could not sit outside and have a cookout "peacefully." Id. The logs kept by Moore, a mostly typed summary relating only to Moore's complaints about Brant and Wilson and her original handwritten log, were admitted into evidence.

3

On cross-examination, Brant's counsel questioned Moore about the accuracy of the typed summary, noting that many of the time durations appeared to have been added at a later date because they were not present in the original handwritten log. For example, the typed log for one entry stated, "1245 barking x 1 hour" while the handwritten log for the same entry stated, "1245 9037 Bark." Tr. p. 24-25; Plaintiff's Ex. 1 at 1; Defendant's Ex. A at 4. In response, the City stipulated "that the times may not be accurate" and stated, "I don't care if they were barking for five minutes or five hours. That's irrelevant. . . ." Tr. p. 26.

Brant's counsel also cross-examined Moore about other notations in the log and the number of times she has called the authorities on other neighbors. Moore admitted to calling the police on children playing in the street in front of her house, which she characterized as "[h]igh-pitched screaming, personal disturbances." Id. at 29. She also admitted to calling the police because of "[d]isturbing loud music" and to calling Animal Care and Control on another neighbor more than forty times in a period of six years. Id. at 29-30. In June 2011, Moore wrote and distributed a letter to others in the neighborhood in which she referred to Brant as a "freeloader" and Wilson as "demented," in addition to airing grievances about other neighbors. Defendant's Ex. D at 1. In her in-court testimony, Moore referred to Brant as "gay" although this assertion is apparently not true. Tr. p. 37, 59. Finally, Moore admitted to installing surveillance cameras that were aimed into the backyard and at the screened-in porch of Brant and Wilson for the purpose of "capturing the dog disturbances." Id. at 34.

4

Several neighbors testified for Brant. Most of the neighbors acknowledged that they had heard the dogs barking on occasion, but they all testified that they were neither seriously annoyed nor seriously disturbed by the barking. Adrian Trowbridge, the neighbor upon whom Moore had called Animal Care and Control forty times, testified that she had her dogs "debarked"[1] because of Moore's repeated reports but that Moore continued to make reports even after the procedure. Id. at 44.

Brant also testified on his own behalf. He testified that he has two short-haired dachshunds and two long-haired dachshunds that he sometimes lets outside in his fenced yard for up to an hour. He stated that the dogs typically go outside for about fifteen or twenty minutes in the morning, and he "occasionally" lets them out at night as well. Tr. p. 59-60. He stated that he never leaves the dogs out when he leaves. Brant testified that the dogs only bark occasionally, such as at other animals or at "[Moore] when she decides to provoke them." Id. at 58. Brant stated that Moore has "ran planks of boards up against her fence," "yell[ed] at [his] dogs," "thrown water over the fence at [the] dogs," "sprayed [the] dogs with her water hose," and "throw[n] dirt over." Id. at 58-59.

In reaching its decision, the trial court observed that Moore is "extremely anal-retentive about keeping notes and about calling the police when something bothers her." Tr. p. 71. However, the court stated that "[i]t is a right as a citizen to call the police when you are disturbed by your neighbors. . . ." Id. In finding that Brant had violated section 531-204(a) of the Revised Code, the trial court stated that "what's been presented to the

---

[1] "Debarking" is a procedure during which a veterinarian makes cuts in the vocal cords of a dog to reduce the volume of a dog's bark. Tr. p. 44-45. This procedure is apparently illegal in some states. Id.

5

court shows that at least one person had been seriously annoyed by the habitual barking of the dogs." Id. at 72. Consequently, the trial court ordered, pursuant to the mandatory provisions of section 531-728 of the Revised Code, that Brant be limited to owning two dogs and that the dogs be spayed or neutered. The trial court ordered these decrees to be completed within thirty days from the date of the hearing.[2] Brant now appeals.

## DISCUSSION AND DECISION

As noted above, Brant's first argument on appeal is that the State failed to prove that he violated the ordinance at issue if the term "persons" in the ordinance is afforded its plain and ordinary meaning. More particularly, Brant argues that the ordinance requires more than one person to be seriously annoyed or disturbed for a violation to occur and that the City consequently failed to meet its burden by presenting only Ms. Moore's testimony in support of its case.

We review a trial court's interpretation of an ordinance de novo. City of Indianapolis v. Campbell, 792 N.E.2d 620, 623-24 (Ind. Ct. App. 2003). Once we arrive at the correct interpretation of a statute, our review of a challenge alleging insufficient evidence is limited. Plesha v. Edmonds ex rel. Edmonds, 717 N.E.2d 981, 986 (Ind. Ct. App. 1999). We will consider only the evidence favorable to the judgment and all reasonable inferences. Muehlman v. Keilman, 257 Ind. 100, 107, 272 N.E.2d 591, 595 (1971). We will not reweigh the evidence or judge the credibility of witnesses, and we will reverse only "if there is not substantial evidence of probative value to establish each

_____

[2] On April 13, 2012, the trial court ruled to stay its judgment and the related restrictions on Brant's dog ownership pending this appeal.

material element of the claim." In re Petition of Meyer, 471 N.E.2d 718, 721 (Ind. Ct. App. 1984).

Ambiguous municipal ordinances are interpreted according to the same rules of construction that apply to ambiguous statutes. Hall Drive Ins., Inc. v. City of Fort Wayne, 773 N.E.2d 255, 257 (Ind. 2002). An ordinance is ambiguous if it is susceptible to more than one reasonable interpretation. Robinson v. Gazvoda, 783 N.E.2d 1245, 1250 (Ind. Ct. App. 2003).

Our primary goal in construing an ordinance is to "ascertain and give effect to the intent of the . . . drafters." Campbell, 792 N.E.2d at 624. The intent of the drafters is best recognized by appreciating the specific language that was chosen. Id. Accordingly, each word in an ordinance should "be given [its] plain, ordinary, and usual meaning, unless a contrary purpose is shown by the . . . ordinance itself." Ragucci v. Metro. Dev. Comm'n of Marion Cnty., 702 N.E.2d 677, 681 (Ind. 1998). However, we consider the ordinance "as a whole" and "avoid 'excessive reliance upon a strict literal meaning or the selective reading of individual words.'" George v. Nat'l Collegiate Athletic Ass'n, 945 N.E.2d 150, 154 (Ind. 2011), reh'g denied (citing State v. Oddi-Smith, 878 N.E.2d 1245, 1248 (Ind. 2008)).

As noted above, Brant was cited for a violation of section 531-204(a) of the Revised Code, which provides:

> It shall be unlawful for a person to own or keep any animal which by frequent or habitual howling, yelping, barking, screeching, other

7

vocalization or otherwise shall cause serious annoyance or disturbance to persons in the vicinity.

Section 101-2 of the Revised Code is instructive in that it sets forth a number of "rules of construction" to be utilized by the courts in their interpretation of all ordinances contained within the Revised Code "unless the context clearly indicates otherwise." Indianapolis, Ind., Rev. Code of the Consol. City and County § 101-2. The subsection most relevant provides, "[a] word importing the singular number only may extend and be applied to several persons and things as well as to one person and thing." Id. § 101-2(3). However, the Revised Code is conspicuously silent as to the construction of a word importing a plural number.

Brant argues that because only Moore testified that she was seriously annoyed or disturbed by his dogs' barking, the trial court erred when it found that he was in violation of the statute because "at least one person had been seriously annoyed by the habitual barking of the dogs." Tr. p. 72. Indeed, if we accept Brant's argument that the ordinance requires multiple persons to be seriously annoyed or disturbed, this finding by the trial court is insufficient to support Brant's citation.

In response, the City asserts that the word "persons" in the ordinance is used disjunctively in that it "is meant to signify <u>one or more</u> individuals." Appellee's Br. p. 5 (emphasis added). In support of its position, the City points to section 531-208(a) of the Revised Code, which provides:

> <u>Persons</u> finding a stray animal are to notify the animal care and control division within forty-eight (48) hours. At the discretion of the division, the

8

> animal may be kept by the <u>finder</u> and a found report left with the division,
> to enable the <u>finder</u> an opportunity to return the animal to its rightful owner.

<u>Id.</u> at 8 (emphasis in original).

We agree with the City that in section 531-208(a) it would prove to be an anomaly if only dogs found by multiple persons were required to be reported to Animal Care and Control because this was likely not the intent of the drafters of this particular ordinance. However, we are not convinced that the disjunctive use of the word "persons" to mean one or more individual in section 531-208(a) necessarily means that the word is used in the same manner in section 531-204(a). In section 531-208(a), the singular term "finder" in the second sentence of the ordinance is used as a synonym for the plural word "persons" in the first sentence. Thus, we agree that for section 531-208(a) of the Revised Code, the context surrounding the use of the word "persons" clearly indicates that it was intended to mean one or more persons.

However, this is not the same context that presents itself in section 531-204(a), where the term "persons" does not relate back to any singular terms in the ordinance. Although the singular term "person" is used in section 531-204(a), it is being used to refer to a different entity than the subject identified by "persons." Because "persons" is used in a dissimilar manner in the two ordinances, we do not believe that what would be an absurd interpretation in one would necessarily also be an absurdity in the other. In other words, we do not believe that we should abandon the plain, ordinary, and usual meaning of "persons" as a plural noun in section 531-204(a) because, unlike in section

9

531-208(a), its context within the ordinance does not clearly suggest a different interpretation.

We have interpreted the plain, ordinary, and usual meaning of the term "persons" at least once before. In Hook v. State, 775 N.E.2d 1125 (Ind. Ct. App. 2002), we interpreted the term in the context of a criminal statute. In Hook, the statute at issue provided that one commits the crime of maintaining a common nuisance when he or she "knowingly or intentionally maintains a [place] that is used one or more times . . . by persons to unlawfully use controlled substances. . . ." 775 N.E.2d at 1127. Recognizing that penal statutes "must be strictly construed"[3] and that words and phrases in a statute are to be given "their plain, ordinary, and usual meaning unless a different meaning is shown by the statute[,]" the Hook Court held that the word "persons" meant "more than one person." Id. Because the evidence demonstrated only that one person had used illegal substances in Hook's home, Hook's conviction was reversed. Id. at 1127-28.

Similarly, in this case, the evidence most favorable to the judgment is insufficient to prove that more than one person was seriously annoyed or disturbed by the barking of Brant's dogs. At most, the evidence shows that Moore was seriously annoyed or disturbed by the barking of Brant's dogs, and other neighbors in the vicinity had heard the dogs barking but were not seriously annoyed or disturbed by the noise. Thus, in light of the plain, ordinary, and usual meaning of the term "persons" in section 531-204(a) of

---

[3] We recognize that proceedings relating to the violations of municipal ordinances are civil rather than penal in nature. See Boss v. State, 944 N.E.2d 16, 21 (Ind. Ct. App. 2011). However, we do not believe that the absence of the requirement for strict construction of a municipal ordinance changes the plain, ordinary, and usual meaning of the term "persons" as expressed in Hook.

the Revised Code, the judgment against Brant in the trial court must be vacated for lack of sufficient evidence.

As a final aside, we address the City's contention that our interpretation of the word "persons" to mean more than one person would run afoul of the guarantee of equal protection under the Fourteenth Amendment to the United States Constitution. See Appellee's Br. p. 8. The City asserts that interpreting the term in this manner "is to assume the City-County Council intended to protect households with multiple dwellers (such as married people or families) but to ignore the household of the single homeowner." Id.

Ordinances, like statutes, are presumed to be constitutional. Carpenter v. Whitley Cnty. Plan Comm'n, 174 Ind. App. 412, 419, 367 N.E.2d 1156, 1161 (1977). Thus, if reasonably avoidable, we will not attribute unconstitutional intention to the drafters of an ordinance. Price v. State, 622 N.E.2d 954, 963 (Ind. 1993). To survive a federal equal protection challenge not involving a fundamental right or a suspect class, as is the case here, an ordinance must be rationally related to a legitimate interest of the municipality. City of Indianapolis v. Armour, 946 N.E.2d 553, 560-61 (Ind. 2011) (citing Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)). To that end, the "legitimate interest . . . need only be plausible[,]" and "it is no requirement that the conceivable policy in fact motivated the governmental decision maker." Id. at 561.

In the present case, while we appreciate that section 531-204(a) of the Revised Code may not give the same level of protection from annoyances to a single homeowner,

11

we disagree that the City-County Council (Council) could not have had a rational basis for its decision to use the plural term "persons" in the ordinance.[4] One possibility raised by Brant is that the Council may have intended requiring multiple complainants to satisfy the need for an objective standard, which he argues is required in his constitutional claim. Appellant's Reply Br. p. 15. Without commenting on Brant's suggestion, we can think of at least one other possibility that would seem to satisfy the rational basis test—that the Council did not wish to invoke its civil penalty authority for a noise ordinance unless multiple members of its citizenry were negatively impacted, such that the noise constituted a public rather than a private nuisance. Because we cannot say that the City did not have a rational basis for using the term "persons," we decline to abandon the plain, ordinary, and usual meaning of the term.

In sum, we find that section 531-204(a) of the Revised Code requires more than one person to be seriously annoyed or disturbed by habitual and frequent animal noises and that the trial court's judgment must be vacated because the City failed to produce evidence that more than one person was bothered by Brant's barking dogs. Because we find these issues to be dispositive, we need not address Brant's allegations that the ordinance is unconstitutional. See Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n, 695 N.E.2d 99, 108 (holding that if a case can be resolved on statutory grounds, judicial restraint mandates that issues of constitutionality be left unresolved).

---

[4] Neither party has cited to any legislative history that would explain why the City-County Council used the term "persons" rather than "person."

The judgment of the trial court is reversed.

ROBB, C.J., and BRADFORD, J., concur.