# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69621-1-I |
| | ) | (Consolidated with |
| Respondent, | ) | No. 69622-0-I) |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| CHRISTOPHER M. SMITH, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: August 18, 2014 |
| | ) | |

Cox, J. — A law violates the ex post facto clauses of the state and federal constitutions if it (1) is substantive, not procedural; (2) is retrospective; and (3) disadvantages the person affected by altering the standard of punishment that existed under the prior law.[1] Christopher Smith appeals, claiming that "[s]ubjecting [him] to the requirements and penalties of the sex offender registration and community notification law" violates the ex post facto clauses of the state and federal constitutions. Because he fails to prove beyond a reasonable doubt that the registration requirements resulting from his conviction are punitive, we affirm.

_____

[1] See State v. Ward, 123 Wn.2d 488, 498-99, 869 P.2d 1062 (1994).

In March 1998, Smith pleaded guilty to one count of possession of depictions of a minor engaged in sexually explicit conduct under former RCW 9.68A.070 (1990). This felony conviction was based on acts he committed in 1997. At that time, this crime was not classified as a "sex offense" requiring registration as a sex offender.[2]

In 2006, the legislature amended the statute defining "sex offense" to include the crime to which Smith pleaded guilty in 1998: possession of depictions of a minor engaged in sexually explicit conduct.[3]

Upon his release in 2007, the Department of Corrections notified Smith in writing about the sex offender registration requirements for his conviction. Smith registered with the Snohomish County Sheriff's Office as a convicted sex offender and began complying with the requirements.

In May 2009, Smith reported that he was homeless. Because of this status, the statute required him to report weekly to the Snohomish County Sheriff's Office.[4] From May 2009 to October 2009, Smith complied with this requirement. But from October 2009 to October 2010, he failed to report in person as required.

In October 2010, Smith registered with a new address in Marysville. On March 20, 2011, police conducted a registration check at this residence. Two

---

[2] See former RCW 9A.44.130(6) (1997); former RCW 9.94A.030(33) (1997).

[3] Laws 2006, ch. 139, § 5.

[4] See former RCW 9A.44.130(6)(b) (2006).

2

residents at the address told police that Smith no longer resided there and had been gone for several days. As of April 14, 2011, Smith had not updated his address with the sheriff's office.

The State charged Smith with two counts of failure to register as a sex offender. One count was based on Smith's failure to report in person to the county sheriff's office from October 2009 to October 2010.[5] The other count was based on his failure to provide timely written notice to the sheriff's office after leaving his residence in March 2011.[6]

Smith agreed to a bench trial on stipulated documentary evidence for both charges. The trial court found Smith guilty as charged.

Smith appeals.

## EX POST FACTO

Smith argues that the sex offender registration and community protection law, as applied to him, violates the ex post facto clauses of both the state and federal constitutions because it is impermissibly punitive. We hold that he has failed to prove beyond a reasonable doubt that the law is punitive. Accordingly, we disagree with his claim that the registration requirements violate the ex post facto provisions of the state and federal constitutions.

"The ex post facto clauses of the federal and state constitutions forbid the State from enacting any law which imposes punishment for an act which was not punishable when committed or increases the quantum of punishment annexed to

---

[5] Clerk's Papers at 285 (citing RCW 9A.44.130).

[6] Id. at 33 (citing RCW 9A.44.132).

the crime when it was committed."[7] The ex post facto analysis is the same under the state constitution as it is under the federal constitution.[8]

"'A law violates the ex post facto clause if it: (1) is substantive, as opposed to merely procedural; (2) is retrospective (applies to events which occurred before its enactment); and (3) *disadvantages the person affected by it*.'"[9]

The "sole determination of whether a law is 'disadvantageous' is whether the law *alters the standard of punishment* which existed under prior law."[10] Accordingly, the ex post facto prohibition applies only to laws inflicting criminal punishment.[11]

This court reviews de novo constitutional issues.[12] A statute is presumed constitutional, and the party challenging it has the burden to prove beyond a reasonable doubt that it is unconstitutional.[13]

Washington's Community Protection Act sets forth provisions related to sex offender registration and community notification.[14] Generally, convicted sex

---

[7] Ward, 123 Wn.2d at 496.

[8] See id.

[9] Id. at 498 (quoting In re Pers. Restraint of Powell, 117 Wn.2d 175, 185, 814 P.2d 635 (1991)).

[10] Id.

[11] Id. at 499.

[12] State v. Enquist, 163 Wn. App. 41, 45, 256 P.3d 1277 (2011), review denied, 173 Wn.2d 1008 (2012).

[13] Ward, 123 Wn.2d at 496.

[14] See RCW 9A.44.130-.141.

offenders are required to register with the appropriate county sheriff within a certain timeframe upon release.[15] The offender must provide specific information, including the following: (1) name and aliases used; (2) complete residential address or, if the person lacks a fixed residence, where he or she plans to stay; (3) date and place of birth; (4) place of employment; (5) crime for which convicted; (6) date and place of conviction; (7) social security number; (8) photograph; and (9) fingerprints.[16] The community notification provision permits dissemination of certain information to the public.[17]

In State v. Ward, our supreme court rejected the argument that the Community Protection Act's sex offender registration requirement violates the ex post facto clause.[18] There, the supreme court assumed without deciding that the statute is substantive rather than procedural.[19] Additionally, it concluded that the statute is retrospective.[20] But the court held that the 1991 version of the statute did not violate the ex post facto clauses of the state and federal constitutions because it did not alter the standard of punishment.[21]

---

[15] See RCW 9A.44.130.

[16] RCW 9A.44.130(2)(a).

[17] See RCW 4.24.550.

[18] 123 Wn.2d 488, 510-11, 869 P.2d 1062 (1994).

[19] Id. at 498.

[20] Id.

[21] Id. at 498-99.

In reaching this conclusion, the supreme court first looked to the legislature's purpose in adopting the law.[22] It stated, "When it enacted the statute, the Legislature unequivocally stated that the State's policy is to 'assist local law enforcement agencies' efforts to protect their communities by *regulating* sex offenders by requiring sex offenders to register with local law enforcement agencies as provided in [RCW 9A.44.130].'"[23]

Next, the supreme court considered "whether the actual *effect* of the statute [was] so punitive as to negate the Legislature's regulatory intent."[24] To assist with this determination, the court turned to the factors listed in Kennedy v. Mendoza-Martinez, a United States Supreme Court case.[25] Those factors are:

> [1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of *scienter*, [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned . . . .[26]

The Ward court noted that while the legislature's regulatory intent was clear, the Mendoza-Martinez factors also weighed in favor of finding that the

---

[22] Id. at 499.

[23] Id. (alteration in original) (quoting Laws of 1990, ch. 3, § 401).

[24] Id.

[25] Id. (citing Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963)).

[26] Id. (quoting Mendoza-Martinez, 372 U.S. at 168-69).

statute is regulatory and not punitive.[27] The supreme court relied on four factors in particular—specifically, factors one, two, four, and seven.[28]

For the first factor, the Ward court concluded that registration, and a limited disclosure of registrant information, did not amount to an affirmative disability or restraint.[29] It noted that the registration information was already on file, the physical act of registration created no disability, and sex offenders were free to move from community to community.[30] Additionally, it concluded that the dissemination of registrant information did not impose additional punishment because the legislature placed limits on the disclosure of registration information to the public.[31]

For the second factor, it concluded that registration has not traditionally or historically been regarded as punishment.[32] It noted that registration "is a traditional governmental method of making available relevant and necessary

---

[27] Id. at 500.

[28] See id. at 500-11.

[29] Id. at 500-07.

[30] Id. at 500-01.

[31] Id. at 502-07.

[32] Id. at 507.

information to law enforcement agencies."[33] It expressly rejected a California court's description of sex offender registration as an "'ignominious badge.'"[34]

For the fourth factor, the Ward court concluded that the statute did not primarily promote the traditional aims of punishment.[35] Rather, the court noted that the legislature's primary intent is to aid law enforcement agencies' efforts to protect their communities.[36] The court stated, "Even if a secondary effect of registration is to deter future crimes in our communities, we decline to hold that such positive effects are punitive in nature."[37]

For the seventh factor, the supreme court concluded that the registration statute is not excessive in relation to its non-punitive purpose.[38] It stated, "[T]he Legislature has spoken clearly that public interest demands that law enforcement agencies have relevant and necessary information about sex offenders residing in their communities."[39]

Since Ward was decided in 1994, the sex offender registration and community notification provisions have undergone changes. One such change

---

[33] Id.

[34] Id. at 507-08 (quoting In re Birch, 10 Cal. 3d 314, 322, 110 Cal. Rptr. 212, 515 P.2d 12 (1973)).

[35] Id. at 508.

[36] Id.

[37] Id.

[38] Id.

[39] Id. at 509.

to the registration provision was the addition of transient offender requirements in 1999.[40] In 2006, these required post-release sex offenders who lack a fixed residence to report weekly, in person, to the sheriff of the county where he or she was registered.[41] The statute required the weekly report to be on a day specified by the county sheriff's office, to occur during normal business hours, and allowed the sheriff's office to require the person to list the locations where he stayed during the last seven days.[42] The statute now requires the offender to keep an "accurate accounting" of where he or she stays during the week and provide it to the sheriff upon request.[43]

In State v. Enquist, Division Two analyzed the 2006 transient offender requirements when reviewing an ex post facto challenge to the statute.[44] There, Gerald Enquist claimed that the transient offender registration requirements would interfere with his ability to hold a job.[45]

Division Two rejected his argument that the statute retroactively imposes punishment by requiring people without a fixed residence to report weekly, in

---

[40] Laws of 1999, ch. 3, § 402; Laws of 1999, 1st Spec. Sess., ch. 6, § 2.

[41] Former RCW 9A.44.130(6)(b) (2006).

[42] Id.

[43] RCW 9A.44.130(5)(b).

[44] 163 Wn. App. 41, 45, 256 P.3d 1277 (2011), review denied, 173 Wn.2d 1008 (2012).

[45] Id.

person, to the county sheriff's office.[46] With little analysis, it concluded that

Enquist failed to prove beyond a reasonable doubt that the transient registration

provision violates the ex post facto clauses.[47] Specifically, it stated:

> Although Enquist testified that weekly reporting was inconvenient,
> inconvenience alone does not make the statute punitive. Enquist
> has not demonstrated that the registration requirements constitute
> **punishment**. As the Ward court concluded, "[a]lthough a registrant
> may be burdened by registration, such burdens are an incident of
> the underlying conviction and are not punitive for purposes of ex
> post facto analysis."[48]

Notably, the supreme court denied review of this case in 2012.[49] There is no

other published decision in Washington addressing the transient offender

requirements.

Along with the addition of transient offender requirements, other important

amendments to the act include changes to the community notification provisions.

The most significant of these changes was the implementation of a statewide

registered sex offender website in 2002.[50] This website is available to the

public.[51] The statute requires that the website contain information about all level

III and level II registered sex offenders, as well as level I registered sex offenders

---

[46] Id.

[47] Id. at 49.

[48] Id. (alteration in original) (citation omitted) (quoting Ward, 123 Wn.2d at 510-11).

[49] See 173 Wn.2d 1008, 268 P.3d 941 (2012).

[50] Laws 2002, ch. 118, § 1.

[51] See http://ml.waspc.org.

during the time they are out of compliance with registration requirements.[52] The amount of information released depends on the offender's classification level, but it may include the offender's name, relevant criminal history, address by hundred block, physical description, and a photograph.[53] The website provides mapping capabilities and allows members of the public to search for registered sex offenders by county, city, zip code, last name, and address.[54]

We can find no published case in Washington that addresses these changes to the notification provisions. In Russell v. Gregoire, the Ninth Circuit determined that Washington's community notification provisions did not violate the ex post facto clause.[55] But this decision was in 1997, before many of the significant changes, especially those regarding the website, took effect.[56]

Here, Smith provides an overview of the history of the Community Protection Act and the changes to the registration and notification provisions that have occurred since Ward. But he fails to articulate either which of the post-Ward changes directly apply to him or which provisions he is specifically challenging. The factual record is not developed, and Smith does not point to any evidence detailing the effects of the registration requirements or community notification provisions as they apply to him. He provides no information about the

---

[52] RCW 4.24.550(5)(a).

[53] See id. at (5)(a)(i)-(ii).

[54] Id. at (5)(a)(i).

[55] 124 F.3d 1079, 1094 (9th Cir. 1997).

[56] Id.

specific requirements he was subjected to or about the specific information that was disseminated to the public in his case. Nor does he argue how the requirements or dissemination of information specifically disadvantages him. Rather, he cites the current version of the statute and argues generally that this court should "re-examine" the supreme court's conclusions in Ward in light of these changes to the law.

The supreme court, not this court, is the proper court to "re-examine" Ward. Rather, our task is to examine these changes identified by Smith and determine whether the analysis in Ward controls this one. In doing so, we conclude that Smith fails to establish why we should deviate from Ward.

As an initial note, both parties briefed the current versions of the act. Accordingly, we analyze Smith's challenges to the current version, notwithstanding the fact that his convictions arose under previous versions of the act.

We begin our analysis by assuming, as in Ward, that the sex offender registration and community notification provisions are substantive, not procedural. We further assume that these requirements, which were enacted after the acts for which Smith was convicted, apply retroactively. Thus, the primary question for us to decide is whether the act is punitive. In deciding this question, we follow the lead of Ward.

As the Ward court noted, the Legislature "unequivocally stated that the State's policy is to 'assist local law enforcement agencies' efforts to protect their communities by *regulating* sex offenders by requiring sex offenders to register

with local law enforcement agencies . . . ."[57] This legislative intent remains the same.

Moreover, Smith fails to show that the effects of the statute are punitive under the four Mendoza-Martinez factors addressed by Ward. Smith goes through these four factors—factors one, two, four, and seven. We address each of these four factors in turn.

For the first factor, whether the sanction involves an affirmative disability or restraint, Smith argues generally that "[t]he burdens imposed by the sex offender registration and community notification statute are significantly more onerous and disabling than in 1994 . . . ."[58]

He identifies the following changes to the statute: (1) Offenders who change their address must notify the sheriff by certified mail or in person within three days, rather than by written notice within 10 days;[59] (2) Offenders who move to a new county must register with the new county sheriff within three days of moving and provide the county sheriff with whom they last registered, by certified mail or in person, signed written notice of the change of address;[60] (3) Low-risk offenders must verify their current residence by responding to annual certified mail inquiries and high-risk offenders by responding to quarterly

---

[57] Ward, 123 Wn.2d at 499 (quoting Laws of 1990, ch. 3, § 401).

[58] Appellant's Opening Brief at 20.

[59] Id. at 21 (citing former RCW 9A.44.130(3) (1990), RCW 9A.44.130(4)(a)).

[60] Id. at 21-22 (citing RCW 9A.44.130(4)(b)).

inquiries;[61] (4) Homeless offenders must report weekly in person to the sheriff's office and keep an accounting of where he or she stays during the week;[62] (5) The penalties for failing to comply with the Act's requirements are harsher;[63] and (6) The dissemination of information to the public is much broader in scope.[64]

As we previously noted, Smith does not specify which changes directly applied to him. But assuming for purposes of analysis that they all did, Smith fails to show that these requirements are punitive.

As the Ward court noted, "Sex offenders are free to move within their community or from one community to another, provided they comply with the statute's registration requirements."[65] Additionally it commented, "It is inconceivable that filling out a short form with eight blanks creates an affirmative disability. Registration alone imposes burdens of little, if any, significance."[66] And it concluded, "Although a registrant may be burdened by registration, such burdens are an incident of the underlying conviction and are not punitive for purposes of ex post facto analysis."[67]

---

[61] Id. at 22 (citing RCW 9A.44.135)).

[62] Id. (citing RCW 9A.44.130(5)(b)).

[63] Id. (citing former 9A.44.130(6) (1990), RCW 9A.44.132(b)).

[64] See id. at 23 (citing RCW 4.24.550(5)).

[65] Ward, 123 Wn.2d at 501.

[66] Id.

[67] Id. at 510-11.

The first three changes that Smith identifies—requiring offenders to notify the respective county sheriffs sooner after moving, requiring offenders to report a move within three days, and requiring offenders to respond to mailing inquiries—appear to be nothing more than burdens of his underlying conviction under Ward.

Moreover, there is nothing in the record to suggest that any of these requirements prevented Smith from moving within his community or from one community to another. And there is nothing to indicate that it was difficult for Smith to comply with any of the requirements. For example, there is no evidence that Smith was not able to register within the proscribed timeframes or by the methods specified in the statute. Smith does not show that these requirements are punitive.

The fourth change that Smith points to centers on the requirements for transient offenders. These requirements are indeed more burdensome, as they require frequent reporting and disclosure of more information, such as an offender's weekly whereabouts. There is no question that these requirements involve more than merely "filling out a short form with eight blanks."[68]

But the fact that the requirements are more burdensome does not necessarily mean they are punitive. As the Enquist court observed when examining the transient offender provisions, although "weekly reporting was inconvenient, inconvenience alone does not make the statute punitive."[69] Division Two saw no reason to deviate from Ward's analysis, and it held that

_____

[68] See Ward, 123 Wn.2d at 501.

[69] Enquist, 163 Wn. App. at 49.

Enquist failed to prove beyond a reasonable doubt that the requirements constituted punishment.[70] The supreme court chose not to disturb that case when it denied review in 2012.

Given this history, we conclude that Smith fails to show why this court should deviate from Ward and Enquist. Smith fails to show beyond a reasonable doubt that this weekly reporting requirement, while more burdensome, is punitive as applied to him. He does not point to any evidence that the weekly reporting requirement interfered with his ability to obtain employment, or that he was substantially inconvenienced by this requirement in any way.

Smith argues generally that other courts around the country "have concluded that statutory provisions similar to Washington's are akin to probation" and are therefore punitive and impose significant restraints.[71] But he makes no attempt to compare the statutory schemes in the cases he identifies to the Community Protection Act in Washington. And despite Smith's bald assertion that they are "similar," in at least two cases, there appear to be substantial differences.

For example, in one case cited by Smith, the statute that the court found to be punitive required offenders to disclose highly personal information including e-mail addresses, computer log-in names, and information about vehicles used.[72]

---

[70] Id.

[71] Appellant's Opening Brief at 26 (citing Wallace v. State, 905 N.E.2d 371, 380 (Ind. 2009); Doe v. Dep't of Pub. Safety & Corr. Servs., 430 Md. 535, 562, 62 A.3d 123 (Md. 2013); State v. Letalien, 985 A.2d 4, 18 (Me. 2009)).

[72] See Dep't of Pub. Safety & Corr. Servs., 430 Md. at 562.

In another case, the statute permitted in-home personal visitation, and required offenders to carry valid identification at all times and inform law enforcement of their plans to travel for more than 72 hours.[73] Further, in both of these cases, the court looked to the all of the statutory restrictions and obligations when they concluded that the statutes had the same effect as placing the petitioner on parole.[74]

In any event, it is the supreme court's decision in Ward that controls here, not what other courts in other states have done in reaching contrary results. Smith's reliance on these extra jurisdictional cases is not persuasive.

For the fifth change, Smith argues that "[t]he threat of prosecution for offenders who do not comply with the Act's complex and ever-changing requirements is also a significant restraint."[75] But he fails to explain how this restrained him, and he fails to cite any authority to support his assertion. Accordingly, we need not consider this argument any further.[76]

Smith makes a strong argument that changes that have occurred to the notification provisions of the statute—specifically, that the greater dissemination of information to the public is a type of restraint. As we discussed earlier in this

---

[73] Wallace, 905 N.E.2d at 379-80.

[74] See, e.g., Dep't of Pub. Safety & Corr. Servs., 430 Md. at 561-62; Wallace, 905 N.E.2d at 380.

[75] Appellant's Opening Brief at 22.

[76] See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

opinion, the notification provisions of the statute have expanded in scope since Ward. The most significant is the implementation of the sex offender website.

The Ward court was sensitive to these concerns when it analyzed the community notification provisions in 1994. In concluding that "the appropriate dissemination of relevant and necessary information does not constitute punishment," the Ward court focused on a number of factors.[77] It held,

> [B]ecause the Legislature has limited the disclosure of registration information to the public, the statutory registration scheme does not impose additional punishment on registrants. The Legislature placed significant limits on (1) whether an agency may disclose registrant information, (2) what the agency may disclose, and (3) where it may disclose the information. The statute regulating disclosure, RCW 4.24.550, provides that "[p]ublic agencies are authorized to release relevant and necessary information regarding sex offenders to the public when the release of the information is necessary for public protection."[78]

The Ward court also focused on the fact that the legislature intended public agencies to disseminate warnings "under limited circumstances" and that a public agency must have some evidence of dangerousness in the future in order to release registrant information.[79]

Smith argues that "[t]hese limitations on the public disclosure of sensitive information about offenders which were written into the original statute and deemed so important by the Washington Supreme Court have practically

---

[77] Ward, 123 Wn.2d at 507.

[78] Id. at 502 (alteration in original) (quoting former RCW 4.24.550(1) (1990)).

[79] Id. at 502-03.

become a nullity."[80] He argues, "Now, *every* level II and level III offender's name, relevant criminal convictions, address by hundred block, physical description, photograph, risk level classification, and compliance status is available to anyone anywhere who has access to the Internet, regardless of whether the information is 'necessary' or 'relevant.'"[81] He points out that the same information about level I offenders is available if that person is not currently in compliance with the reporting requirements.[82]

Smith notes that Ward stated, "It is only where the criminal history record contains non-conviction data, or where the criminal justice agency discloses that [a] person is a registered sex offender, that dissemination will have the potential for creating an additional restraint."[83] And he argues that "[t]his potential for additional restraint is now a substantial reality."[84]

Notwithstanding this argument, we are not convinced the result under Ward should be any different in this case. In Smith v. Doe, a United States Supreme Court case, the court stated, "If the disability or restraint is minor and indirect, its effects are unlikely to be punitive."[85] There, the court rejected an argument that the dissemination of information imposed a restraint by making

---

[80] Appellant's Opening Brief at 24-25.

[81] Id. at 25.

[82] Id.

[83] Id. at 23 (citing Ward, 123 Wn.2d at 501).

[84] Id.

[85] 538 U.S. 84, 100, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003).

offenders unemployable.[86] The court noted that the record in that case contained "no evidence that the [Alaska Sex Offender Registration] Act has led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred through the use of routine background checks by employers and landlords."[87]

Likewise, here, there is no evidence in the record to show that because of the notification provisions, Smith suffered any occupational, housing or other disadvantages. We need not speculate on whether the documentation of such information would change the result.

Smith argues that other courts have found that "aggressive public notification" of sex offender crimes imposes significant affirmative disabilities on offenders. For this argument he relies on Wallace v. State, a case from the Supreme Court of Indiana, and Doe v. Pataki, a case from the Second Circuit.[88]

These cases provide some support for his assertion. In Wallace, the court noted that "the practical effect of this dissemination is that it often subjects offenders to 'vigilante justice' which may include lost employment opportunities, housing discrimination, threats, and violence."[89] Similarly, in Pataki, the Second Circuit acknowledged the negative consequences of community notification,

---

[86] Id.

[87] Id.

[88] Appellant's Opening Brief at 26-27 (citing Wallace v. State, 905 N.E.2d 371, 380 (Ind. 2009); Doe v. Pataki, 120 F.3d 1263, 1279 (2d Cir. 1997)).

[89] Wallace, 905 N.E.2d at 380.

including "public shunning, picketing, press vigils, ostracism, loss of employment, and eviction, to threats of violence, physical attacks, and arson."[90]

But, as previously stated in this opinion, Smith fails to present any evidence or argument about the consequences of the dissemination of his information. And he does not point to anything to suggest that he suffered the type of harm contemplated by Wallace or Pataki.

Moreover, in Pataki, even after acknowledging these potential consequences, the court concluded that these "detrimental consequences" do not "suffice to transform the regulatory measure of community notification into punishment.[91] Like in Pataki, Washington's legislature "evidences a clear regulatory intent to limit the exchange of relevant information to the general public to those circumstances which present a threat to public safety."[92] Smith fails to show that the *potential* for negative consequences transforms this regulatory measure into punishment.

To summarize, Smith fails to demonstrate that any of the changes he identifies imposed a "significant affirmative disability and restraint." Accordingly, he fails to show why this court should deviate from Ward's analysis of the first factor of Mendoza-Martinez.

For the second factor, whether the sanction has historically been regarded as punishment, Smith argues that this court should re-examine Ward's

---

[90] Pataki, 120 F.3d at 1279.

[91] Id.

[92] Ward, 123 Wn.2d at 502.

conclusion "[g]iven the development of the law since Ward was decided and the current regime permitting wide and indiscriminate dissemination of personal information about offenders to the public even when not 'relevant and necessary.'"[93]

To support his argument, Smith points to two recent cases, Wallace, and Doe v. Department of Public Safety and Correctional Services, a case from the Court of Appeals of Maryland.[94] He does not provide any in depth discussion or analysis about these cases, but rather, relies on them for the proposition that "[o]ther courts have said the wide public dissemination of personal information about sex offenders is akin to the traditional punishment of shaming."[95]

In Wallace, the court noted that "the Act exposes registrants to profound humiliation and community-wide ostracism" and concluded that dissemination resembles the punishment of shaming.[96] Similarly, Doe noted "the dissemination of Petitioner's information pursuant to the sex offender registration statute, is tantamount to the historical punishment of shaming."[97]

But even though Wallace and Doe support Smith's argument, our supreme court in Ward disagreed with the rationale underlying these cases when

---

[93] Appellant's Opening Brief at 27-28.

[94] Appellant's Opening Brief at 27-28 (citing Wallace, 905 N.E.2d at 380; Doe v. Dep't of Pub. Safety & Corr. Servs., 430 Md. 535, 562, 62 A.3d 123 (Md. 2013)).

[95] Id. at 28.

[96] Wallace, 905 N.E.2d at 380.

[97] Dep't of Pub. Safety & Corr. Servs., 430 Md. at 564.

it expressly rejected the argument that public stigma is a punitive effect of sex offender registration.[98] It stated, "Public stigma arises not as a result of registration nor as a result of release to the general public of information concerning a conviction. Any 'badge of infamy' stigma that may exist arises from private reactions to the crime by members of the general public."[99]

Further, although Ward did not consider dissemination of information on the Internet, not all courts have held that this type of dissemination is punishment. For example, the United State Supreme Court's opinion in Smith provides guidance.[100] As previously discussed, the Supreme Court analyzed the Alaska Sex Offender Registration Act, which contained a registration requirement and a notification system.[101] Like Washington, Alaska makes information available to the public on the Internet.[102]

The Supreme Court concluded that the notification provisions did not resemble traditional forms of punishment.[103] It stated, "Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment."[104] It commented that, in contrast to colonial shaming,

---

[98] Ward, 123 Wn.2d at 506.

[99] Id.

[100] Smith, 538 U.S. 84.

[101] Id. at 89-90.

[102] Id. at 91.

[103] Id. at 98.

[104] Id.

"the State does not make the publicity and the resulting stigma an integral part of the objective of the regulatory scheme."[105] Importantly, it stated:

> The fact that Alaska posts the information on the Internet does not alter our conclusion. It must be acknowledged that notice of a criminal conviction subjects the offender to public shame, the humiliation increasing in proportion to the extent of the publicity. And the geographic reach of the Internet is greater than anything which could have been designed in colonial times. These facts do not render Internet notification punitive. The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.
>
> The State's Web site does not provide the public with means to shame the offender by, say, posting comments underneath his record. An individual seeking the information must take the initial step of going to the Department of Public Safety's Web site, proceed to the sex offender registry, and then look up the desired information. The process is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality. The Internet makes the document search more efficient, cost effective, and convenient for Alaska's citizenry.[106]

Accordingly, although Wallace and Doe concluded that the dissemination of information was punitive, the Ward court disagreed that public stigma is a punitive effect of the statute. This court is bound by Ward. Further, even though Ward did not examine the current scope of information disseminated via the Internet, the Supreme Court's opinion in Smith reached similar conclusions even after considering the impact of the Internet. Given these considerations, Smith

---

[105] Id. at 99.

[106] Id.

fails to demonstrate why this court should deviate from Ward's analysis on the second factor.

For the fourth factor, whether the law's operation promotes the traditional aims of punishment—retribution and deterrence, Smith argues that "other courts have found this factor weighs in favor of finding the law to be punitive because the deterrent and retributive effects of the law can be substantial."[107] He quotes Wallace, which stated, "[I]t strains credulity to suppose that the Act's deterrent effect is not substantial, or that the Act does not promote 'community condemnation of the offender,' both of which are included in the traditional aims of punishment."[108]

But, as Smith acknowledges, Ward expressly reached the opposite conclusion. The Ward court stated, "Even if a secondary effect of registration is to deter future crimes in our communities, we decline to hold that such positive effects are punitive in nature."[109] This court is bound by Ward's decision on this factor.

For the seventh factor, whether the law is excessive in relation to the alternative purposes assigned, Smith argues that this court must re-examine Ward's conclusion that the act's effects were not excessive in relation to its nonpunitive purpose.

---

[107] Appellant's Opening Brief at 29.

[108] Wallace, 905 N.E.2d at 382 (citation omitted) (quoting Abercrombie v. State, 441 N.E.2d 442, 444 (Ind. 1982)).

[109] Ward, 123 Wn.2d at 508.

He argues, "Other courts have concluded any nonpunitive purpose of their registration and notification statutes was outweighed by their punitive effects."[110] But the legislature's clear regulatory purpose remains the same. And, for the reasons discussed previously, Smith fails to provide any persuasive argument why this court should deviate from Ward on this factor.

We conclude, given the supreme court's extensive analysis in Ward and its rejection of the underlying rationale in the cases cited by Smith, that he has not met his burden to prove beyond a reasonable doubt that the Community Protection Act is unconstitutional.

We affirm the judgment and sentence.

Cox, J.

WE CONCUR:

Spearman, C.J.

---

[110] Appellant's Opening Brief at 30.